# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2978

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TARYLL MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03CR000180-001—**John Daniel Tinder**, *Judge.*

ARGUED APRIL 19, 2006—DECIDED JUNE 7, 2006

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Taryll Miller was convicted of distributing cocaine and sentenced to 300 months' imprisonment. He contends that statements he made to the police should have been suppressed as involuntary, but the district court's findings of fact make that argument frivolous. Miller was twice given *Miranda* warnings before saying anything, and the district court concluded that the police did not engage in any coercive tactics that would spoil the voluntariness of the statements Miller made in his car and at his home. Miller contends that the police threatened to arrest his girlfriend and put their child in

foster care if he did not confess; the judge found otherwise, and that conclusion is not clearly erroneous.

According to Miller, the district judge acted inconsistently by excluding statements he made at the police station while allowing the prosecutor to use the statements he had made earlier in his car and at his home. The judge concluded that, at the station, the police *had* threatened to arrest him and his girlfriend if he asked for an attorney or exercised his right to remain silent, and that this threat made his statements involuntary. There is no factual inconsistency: the judge concluded that the threat had been made at the police station but not earlier. See *United States v. Adeyeye*, 359 F.3d 457, 462 (7th Cir. 2004). And if there is legal inconsistency, Miller is the beneficiary, because the judge should have allowed all of the statements to be admitted into evidence.

The police offered Miller a way to retain his freedom: come clean and cooperate in the investigation of his suppliers and customers. If Miller chose silence plus counsel, implying an adversarial stance—as the police told him he had every right to do—the natural consequence was immediate custody and prosecution for Miller and his girlfriend. The police had probable cause to arrest them both, for the house they shared contained not only illegal drugs but also illegal weapons (including an AK-47 assault rifle). Miller chose to pledge cooperation and both were left at liberty, just as the police had promised. Miller was not prosecuted until after he reneged on his pledge to help the investigation.

A choice between cooperation and freedom, on the one hand, and silence followed by custody and prosecution, on the other, is a common one. This is the real choice many suspects face whether or not the police lay it out it in so many words; clear articulation of the options makes a choice better informed and thus more rather than less

voluntary. That's why we held in *Johnson v. Trigg*, 28 F.3d 639 (7th Cir. 1994), that a promise to release the suspect's mother from custody if he confesses does not make his statement involuntary; if the police have good ground for holding the mother, the information adds to the options at the suspect's disposal. Cf. *Arizona v. Fulminante*, 499 U.S. 279 (1991); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Miller v. Fenton*, 474 U.S. 104 (1985). Suspects are not entitled to full information, see *Ohio v. Robinette*, 519 U.S. 33 (1996); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), but can't complain when they get it and learn that some of the options are unpalatable.

An objectively unwarranted threat to arrest or hold a suspect's paramour, spouse, or relative without probable cause could be the sort of overbearing conduct that society discourages by excluding the resultant statements. See *Lynumn v. Illinois*, 372 U.S. 528 (1963) (which we understood in *Johnson* to demonstrate that hostage-taking is unduly coercive). But a factually accurate statement that the police will act on probable cause to arrest a third party unless the suspect cooperates differs from taking hostages. Cf. *Hartman v. Moore*, 126 S. Ct. 1695 (2006) (probable cause for criminal accusation defeats a claim for damages based on retaliatory prosecution). Miller has not given us any reason to doubt that the police accurately stated what they would do if he clammed up, and he does not deny that the Constitution would have allowed them to carry out that plan, for they had probable cause to arrest both Miller and his girlfriend. This is not to say that candor always is essential; a modicum of trickery is tolerable during criminal investigations. See *United States v. Ceballos*, 302 F.3d 679, 694-95 (7th Cir. 2002); *Holland v. McGinnis*, 963 F.2d 1044, 1055 (7th Cir. 1992); *United States v. Rutledge*, 900 F.2d 1127, 1130-31 (7th Cir. 1990). How far agents may go to mislead is not in question here, however, for they told Miller the (unwelcome) truth.

Requiring the police to keep their plans secret could not help suspects: if Miller had been unable to make a deal by offering information and cooperation, then both adult occupants of the place where the drugs and guns were found could have been arrested; their arrests would have made it necessary to institutionalize their child or place him in foster care unless relatives were available and willing to assist. Miller was able to keep his girlfriend and child together by providing information and a promise of cooperation. The choice that the police extended—cooperate and remain free, or be silent and enter custody together with the confederate in his household—made him better off than official reticence and his own ignorance of consequences would have done. An offer that makes the recipient better off cannot be condemned as coercive. See *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir. 1987). It would be unthinkable to have a legal rule requiring the police to say, in response to a suspect's inquiry: "We are forbidden to tell you what will happen to you, your girlfriend, and your child if you decline to cooperate."

Now we turn to the penalty for Miller's crimes. When imposing sentence, the district judge took into account testimony at another trial. The informant who led the police to Miller was murdered, and Miller's uncle was convicted of that crime. The district court considered the transcript of the uncle's testimony at that trial. Although the transcript is not in the appellate record—a shortcoming for which Miller is responsible, see Fed. R. App. P. 10(a)—the appellate briefs tell us that Miller's uncle named him as an accessory in the murder. Miller contends that the court's consideration of this transcript violates the Constitution, because the uncle was not subject to cross-examination at his sentencing. See *Crawford v. Washington*, 541 U.S. 36 (2004). But *Crawford* rests on the confrontation clause of the sixth amendment, which the Supreme Court has held does not apply to sentencing. *Williams v. New York*, 337

U.S. 241 (1949). We therefore concluded in *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005), that *Crawford* does not make hearsay inadmissible once guilt has been established.

Nor does the combination of *Crawford* with *United States v. Booker*, 543 U.S. 220 (2005), change the rules of evidence at sentencing. See *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005); *United States v. Martinez*, 413 F.3d 239, 243-44 (2d Cir. 2005); *United States v. Brown*, 430 F.3d 942, 943 (8th Cir. 2005). The remedial portion of *Booker* deprives the Sentencing Guidelines of their quality as "laws," a step that enables judges to resolve factual disputes as they did before that decision. See *United States v. Watts*, 519 U.S. 148 (1997). By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. Judges should not lean on unreliable hearsay, but testimony in another trial, subject to cross-examination in open court, is among the most reliable kinds of hearsay. Miller was free to call his uncle to the stand in his own sentencing if he wanted to pursue this subject, but he chose not to do so; perhaps he thought that this would open the door to details that he preferred the judge not to learn. Nor did Miller offer any other evidence on the subject of the informant's murder, or ask the United States to produce any person for examination as a hostile witness. The court offered him an opportunity to test his uncle's statements in a way that could sift fact from fiction; the decision not to use this opportunity squelches Miller's argument based on the due process clause. See *United States v. Atkin*, 29 F.3d 267 (7th Cir. 1994). His argument rests (as it must given his decision not to put his uncle's testimony in the appellate record) on the proposition that hearsay *never* can be used in sentencing, and that proposition is wrong.

Even without treating Miller as an accomplice to murder, the Sentencing Guidelines prescribed a range of 324 to 405 months. The district judge refused to apply the Guidelines as written, however. Following 21 U.S.C. §841(b)(1)(B), which was enacted in 1986, the Guidelines have treated 1 gram of crack cocaine the same as 100 grams of powder cocaine since their inception. In 1995 the Sentencing Commission announced amendments that would have equated the sentences for powder and crack cocaine, while leaving in place the differential mandatory minimum sentences that are beyond the Commission's remit. That proposal, however, was disapproved under the procedure specified by 28 U.S.C. §994(p) when both Houses of Congress passed, and the President signed, legislation canceling the revision. Pub. L. 104-38, 109 Stat. 334 (1995).

In 1997 the Commission issued a report asking Congress to change the statute or at least allow it leeway over sentences that exceed the mandatory minimums; the legislature took no action. In 2002 the Commission again recommended that Congress reduce the ratio, this time suggesting 20-to-1 if not lower. United States Sentencing Commission, *Cocaine and Federal Sentencing Policy* (2002). Congress once again did not enact legislation implementing this proposal, but the district judge declared that *Booker* had freed the judiciary to adopt the Commission's 2002 recommendation on its own. Disagreeing with Congress's decisions of 1986 and 1995, the district judge employed a 20-to-1 conversion and recalculated the range as 262 to 327 months. He selected the sentence of 300 months from within that range (implying that he gave little if any weight to the possibility that Miller had contributed to the informant's murder).

Although 300 months is below the actual Guideline range, Miller contends that the sentence nonetheless is unreasonably high. He maintains that crack and powder cocaine should be treated as identical, as the Commission proposed

in 1995, and as he sees it a 1-to-1 ratio would have reduced the applicable sentencing range to 210 to 262 months. Changing the crack-to-powder ratio need not have this effect, however. The Commission proposed a different ratio but not necessarily lower penalties. If Congress had accepted the Commission's proposal, it could have reduced the conversion factor by raising the sentences for powder cocaine while leaving sentences for crack alone, or it could have raised powder sentences while reducing crack sentences so that the two ranges converged midway.

A more fundamental problem with Miller's position— with the district court's as well—is that the judiciary is not free to replace Congress's approach with one that it deems superior. See, e.g., *Neal v. United States*, 516 U.S. 284 (1996); *Chapman v. United States*, 500 U.S. 453 (1991). By legislative decision, the 100-to-1 ratio appears in the Guidelines as well as the statute, and we have held that the choice is a constitutional one. See *United States v. Spencer*, 160 F.3d 413 (7th Cir. 1998); *United States v. Westbrook*, 125 F.3d 996, 1010 (7th Cir. 1997); *United States v. Lawrence*, 951 F.2d 751, 753-56 (7th Cir. 1991).

Although the district judge thought that *Booker* relieves the judiciary of any need to respect these rules—and Miller wants this court to take even greater liberties than the district judge did—the Supreme Court did not alter any substantive norms in that decision. As we pointed out in *United States v. Cannon*, 429 F.3d 1158 (7th Cir. 2005), when holding that *Booker* does not permit district judges to disregard mandatory minimum sentences or change the treatment of recidivist offenders, all that *Booker* does is specify the appropriate decision maker (the jury) and the burden of persuasion (beyond a reasonable doubt) for facts that affect statutory maximum penalties.

The Supreme Court did not alter which facts (once found) have what legal consequences. See also, e.g., *United States*

*v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005); *United States v. Rivera*, 411 F.3d 864, 866-67 (7th Cir. 2005); *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). That is why both courts of appeals that have considered this issue have held that after *Booker* district judges are obliged to implement the 100-to-1 ratio as long as it remains part of the statute and the Guidelines. See *United States v. Pho*, 433 F.3d 53 (1st Cir. 2006); *United States v. Eura*, 440 F.3d 625 (4th Cir. 2006). Cf. *United States v. Cawthorn*, 429 F.3d 793, 802-03 (8th Cir. 2005) (ratio not "unreasonable" as the *Booker* remedial majority used that term).

We held in *United States v. Gipson*, 425 F.3d 335 (7th Cir. 2005), that defendants are not entitled to a deviation from the statutory ratio. Now we add, in agreement with *Eura* and *Pho*, that district judges must continue to carry out the legislative choice, even though there may be powerful reasons for change.

*Booker* does make the Guidelines advisory rather than binding, so *after* computing the sentencing range according to the statute and Guidelines a judge has discretion to impose a reasonable sentence that is outside the range (provided that statutory minimum penalties are respected). What makes a sentence "reasonable," however, depends on the specifics of the case at hand; 18 U.S.C. §3553(a), which lists the factors that control after *Booker*, does not include a factor such as "the judge thinks the law misguided."

Section 3553(a)(6) tells judges to take account of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct", but a judge is not a free agent when assessing whether a difference is "unwarranted": that question, like many others, depends on legal rules. Thus we held in *United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006), that one properly established Guideline range may not be treated as an "unwarranted" disparity compared with

some other valid sentence (say, one that includes a discount for a guilty plea or cooperation with the prosecution). "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose after *Booker*, the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to §3553(a)(6)." 437 F.3d at 638. *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006), and *United States v. Galicia-Cardenas*, 443 F.3d 553 (7th Cir. 2006), apply that rule by holding that differences created by fast-track programs in some districts, conducted under statutory authority, are not "unwarranted." So, too, differences called for by §841(b)(1)(B) and supported by the protocols that U.S.S.G. §2D1.1 prescribes for comparing different weights and kinds of illegal drugs are not "unwarranted." The warrant for these differences lies in decisions taken by Congress and the Sentencing Commission.

Miller should give thanks that the United States did not file a cross-appeal. Had it done so, then as in *Eura* and *Pho* resentencing under the statutory ratio would have been required. As it is, the prosecutor was content with Miller's 300-month sentence, and the lack of a cross-appeal protects him against any increase. See *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479-82 (1999); *Rivera*, 411 F.3d at 867. He is not entitled to any further reduction.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*