[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2006
THOMAS K. KAHN
CLERK

No. 05-13205

_____

D.C. Docket No. 04-00111-CR-ORL-31-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

AARON ERIC WILLIAMS,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, and PRYOR, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the

Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), rehearing en banc is **DENIED**.

/s/ Stanley F. Birch, Jr.

_____

ACTING CHIEF JUDGE

BLACK, Circuit Judge, Concurring in the Denial of Rehearing En Banc, in which CARNES, MARCUS and PRYOR, Circuit Judges, join:

The decisions in *United States v. Marcus Williams*, 435 F.3d 1350 (11th Cir. 2006), *United States v. Aaron Williams*, 456 F.3d 1353 (11th Cir. 2006), and *United States v. Pope*, 461 F.3d 1331 (11th Cir. 2006), correctly apply *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).  The decisions of this Circuit principally distinguish between varying from an advisory Guidelines range based on a case-specific, individualized application of the 18 U.S.C. § 3553(a) factors and varying from an advisory Guidelines range based on a categorical rejection of Congress's clearly expressed sentencing policy as embedded in the Guidelines and in its statutes.  The latter amounts to error, while the former falls within the scope of the district court's discretion intended by *Booker*.

The cases of this Circuit cited above all deal with the 100-to-1 powder cocaine-to-crack cocaine ratio codified in 21 U.S.C. § 841(b)(1)(B) and embedded in U.S.S.G. § 2D1.1.  Our evaluation of these cases naturally requires a thorough understanding of the district court's role in sentencing post-*Booker* and the history of the powder-to-crack cocaine ratio before we can apply that understanding to the three cases cited above and to the dissent to the denial of rehearing *en banc* in this case.

3

A.      The District Court's Role in Sentencing Post-*Booker*

Under our constitutional system, the power to define penalties for federal crimes belongs to Congress, not the judiciary. *United States v. Evans*, 333 U.S. 483, 486, 68 S. Ct. 634, 636 (1948). The judiciary is not free, generally, to replace a congressional policy with one it deems superior. *See, e.g.*, *Neal v. United States*, 516 U.S. 284, 116 S. Ct. 763 (1996); *Chapman v. United States*, 500 U.S. 453, 111 S. Ct. 1919 (1991).

Congress created the Sentencing Commission under its power to define penalties for federal crimes, using a sentencing guidelines scheme to limit judicial discretion. Of course, Congress's authority in this area is not without limitation. In *United States v. Booker*, the Supreme Court held that mandatory sentencing enhancements triggered by judge-found facts violate a defendant's constitutional right to a trial by jury. 543 U.S. at 244, 125 S. Ct. at 756. To solve the constitutional problem, the Court excised the statutory provision that made the Sentencing Guidelines mandatory, thereby rendering them advisory. *Id.* at 244–46, 125 S. Ct. at 756–57.

Rendering the Guidelines advisory, however, does not permit unfettered judicial discretion. District courts must still "consult [the] Guidelines and take them into account when sentencing." *Id.* at 264, 125 S. Ct. at 767. Moreover,

4

*Booker* cabined judicial discretion by grounding it in the 18 U.S.C. § 3553(a) factors.[1] *Id.* at 261, 125 S. Ct. at 766. These factors serve to guide district courts in applying their newly found discretion in individual cases, and to promote greater uniformity in sentencing decisions. *Id.* at 263–64, 125 S. Ct. at 766–67.

After the *Booker* decision, sentencing now requires two steps. First, the district court must correctly calculate the applicable sentencing range provided by the Sentencing Guidelines. *United States v. McVay*, 447 F.3d 1348, 1353 (11th Cir. 2006). Second, the district court must determine a reasonable sentence by considering the sentencing range provided by the Guidelines and the § 3553(a)

---

[1]The § 3553(a) factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . and . . . that . . . are in effect on the date the defendant is sentenced . . . ;
(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission . . . and . . . that . . . is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

factors. *Booker*, 543 U.S. at 264, 125 S. Ct. at 767; *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

B.      The Powder Cocaine-to-Crack Cocaine Ratio

The 100-to-1 cocaine-to-crack ratio directly reflects clearly expressed, unambiguous congressional sentencing policy, which Congress embedded in the U.S. Code and is reflected in the Guidelines.[2]  Following 21 U.S.C. § 841(b)(1)(B), which Congress enacted in 1986, the Guidelines have always treated 1 gram of crack cocaine the same as 100 grams of powder cocaine.  In 1995, the Sentencing Commission proposed amendments that would have abandoned the 100-to-1 ratio and equated the sentences for powder cocaine and crack cocaine, while leaving in place the different mandatory minimum sentences that are beyond the Sentencing Commission's reach.  Congress, however, passed, and the President signed, legislation rejecting the amendments.  Act of Oct. 30, 1995, Pub. L. 104–38, 109 Stat. 334.  In 1997, the Commission again issued a report asking Congress to change the statute or to allow district courts discretion over sentences exceeding the statutory minimum.  Congress took no action. United States Sentencing Comm'n, *Cocaine and Federal Sentencing Policy*

_____

[2]This Circuit has consistently upheld the ratio against constitutional challenges.  *See United States v. Hanna*, 153 F.3d 1286 (11th Cir. 1998); *United States v. King*, 972 F.2d 1259 (11th Cir. 1992).

6

(1997). In 2002, the Commission still again recommended that Congress reduce the ratio. United States Sentencing Comm'n, *Cocaine and Federal Sentencing Policy* (2002). Congress once again took no legislative action.

Arguing the 100-to-1 ratio reflected in the Guidelines is not Congress's policy but the Sentencing Commission's policy alone ignores Congress's repeatedly expressed policy judgment. In determining the threshold quantities for the statutory sentencing ranges in 21 U.S.C. § 841(b), Congress decided on a 100-to-1 ratio, and the Sentencing Commission followed Congress's decision to avoid creating sentencing disparities. *See* §§ 841(b)(1)(A)(ii), (iii) (applying the same penalties to offenses involving 5 kilograms or more of cocaine powder and offenses involving 50 grams or more of crack cocaine); §§ 841(b)(1)(B)(ii), (iii) (applying the same penalties to offenses involving 500 grams or more of cocaine powder and offenses involving 5 grams or more of crack cocaine).

Congress realized gross sentencing disparities would occur if it accepted the Sentencing Commission's proposal to equate the drugs for Guidelines purposes. H.R. Rep. No. 104-272, at 4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 335, 337. For example, if Congress affirmed the Sentencing Commission's recommendations and either equated the drugs or used a different ratio in the Guidelines than it used in setting its statutory minimums and maximums,

defendants whose offenses involved the same drug but different amounts near the threshold drug quantity for a mandatory minimum sentence would receive markedly different sentences depending on whether the amounts met the threshold for a mandatory minimum or whether the amounts fell just short. Rationally, Congress rejected the Commission's proposals to equate the two drugs, mandating the 100-to-1 ratio. To do otherwise would have undermined its statutory objective of avoiding unwarranted disparities in sentences. Congress ensured its sentencing policy was reflected clearly in the Guidelines.

After *Booker*, some district courts concluded they were free to disagree openly with this clearly expressed, unambiguous congressional sentencing policy embedded in the Guidelines and in the U.S. Code. Their sentencing decisions fell into three categories. Some district courts recalculated the Guidelines range with a lower cocaine-to-crack ratio. *See United States v. Pho*, 433 F.3d 53 (1st Cir. 2006). Other district courts calculated the Guidelines range correctly, but then varied from the range based on categorical rejections of the congressional policy behind the cocaine-to-crack ratio without looking at the case-specific, individualized facts pertinent to each defendant. *See United States v. Miller*, 450 F.3d 270 (7th Cir. 2006). Finally, some district courts couched their disagreement with the cocaine-to-crack ratio in the language of the § 3553(a) factors, but did so

without indicating any case-specific, individualized reasons a factor required either an upward or downward variance from the advisory Guidelines range. *See United States v. Eura*, 440 F.3d 625 (4th Cir. 2006).

This final category presents the most problems. The determination of the gray area between case-specific, individualized facts and generalized rejections of unambiguous congressional policy will naturally involve an extensive review of the record.

Although each Circuit to address the cocaine-to-crack ratio in the Guidelines has approached the issue differently, in large part because the cases have had different factual and procedural backgrounds, these Circuits have all agreed that a district court is not at liberty to vary from an advisory Guidelines range because of a categorical rejection of congressional sentencing policy regarding the 100-to-1 ratio. The Circuits allow variances only for case-specific, individualized reasons grounded in the § 3553(a) factors. *United States v. Williams*, 456 F.3d 1353 (11th Cir. 2006) (holding the district court's rejection of the 100-to-1 drug quantity ratio cannot be justified); *United States v. Gunter*, 462 F.3d 237, 249 (3d Cir. 2006) (suggesting a court categorically rejecting "the 100:1 ratio and substitut[ing] its own . . . is *verboten*"); *United States v. Tzep-Mejia*, 461 F.3d 522, 527 (5th Cir. 2006) (agreeing with the courts that hold a district court

judge "is not entitled to base its decision to give a non-Guideline sentence on its disagreement with policy established by Congress . . . that traffickers in crack cocaine should receive stiffer sentences than traffickers in powder cocaine"); *United States v. Castillo*, 460 F.3d 337, 361 (2d Cir. 2006) (holding "nothing in § 3553(a) or in *Booker* . . . authorizes district courts to sentence defendants for offenses involving crack cocaine under a ratio different from that provided in the Sentencing Guidelines" other than for "case-specific applications of the § 3553(a) factors"); *United States v. McCullough*, 457 F.3d 1150, 1172 (10th Cir. 2006) (agreeing "it is error for a district court to impose a sentence outside the advisory Guidelines range based upon its own disagreement with the crack cocaine/powder cocaine disparity"); *United States v. Brown*, 453 F.3d 1024, 1027 (8th Cir. 2006) (intimating its agreement "that a district court may not reasonably impose a sentence outside the advisory range based solely on a rejection of the disparate treatment of crack and powder cocaine under the guidelines"); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006) (holding courts cannot reject the 100-to-1 ratio and can only vary from the range for "the specifics of the case at hand"); *United States v. Eura*, 440 F.3d 625, 633 (4th Cir. 2006) (holding a district court errs when it substitutes its own crack cocaine/powder cocaine ratio); *United States v. Pho*, 433 F.3d 53, 62 (1st Cir. 2006) (concluding a "categorical, policy based

10

rejection of the 100:1 ratio, amounted to error as a matter of law").

These Circuits have distinguished between variances based on case-specific, individualized applications of the § 3553(a) factors and variances based on broad, categorical rejections of congressional policy as reflected in the Guidelines. In *Booker*, Justice Breyer explained that the "features of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to *individualize* sentences where necessary." *Booker*, 543 U.S. at 264–65, 125 S. Ct. at 767 (emphasis added). The focus of *Booker*, therefore, is to allow district judges the flexibility to tailor sentences for *individual* defendants.

Based on the principle of separation of powers, Supreme Court precedent, our own precedent, and the holdings of our sister circuits, there *is* a difference between sentencing based on a categorical rejection of Congress's clearly expressed, unambiguous sentencing policy embedded in the Guidelines and sentencing based on factors specific to the individual defendant and his offense conduct. The former amounts to error, while the latter is the embodiment of the advisory nature of the Guidelines. As discussed above, the determination of the gray area between case-specific, individualized facts and categorical rejections of

11

Congress's clear sentencing policy will naturally involve an extensive review of the record. The need for an extensive review, however, does not trivialize the important difference between determining a reasonable sentence based on case-specific, individualized facts and usurping Congress's role in setting sentencing policy.

As the Second Circuit aptly explained, a sentencing court has two roles, each embedded in the text of § 3553(a). *Castillo*, 460 F.3d at 355–56. Section 3553(a)(2) instructs the district court to consider "the need for the sentence imposed to reflect the seriousness of the offense, while in § 3553(a)(4), the district court is instructed to consider the sentencing range for the applicable *category* of offense." *Id.* at 355 (internal quotation omitted). The language of the two sections highlights the difference between one particular defendant's offense and the larger *category* of offense. *Id.* It is the province of the judiciary to decide the seriousness of a particular defendant's offense on a case-by-case, individualized basis, whereas it is the realm of the legislature to make a policy choice about a whole *category* of offense. Nothing, then, empowers a district court judge to pronounce a broad policy choice rather than a sentence based on the specific facts of a case. *Id.* at 357.

C.  *Marcus Williams, Aaron Williams,* and *Pope*

This Circuit has faithfully applied *Booker* in distinguishing between a variance based on case-specific, individualized applications of the § 3553(a) factors and a variance based on categorical rejections of Congress's unambiguous sentencing policy embedded in the Guidelines. In *United States v. Marcus Williams*, the panel affirmed a district court's sentence, even though the district court varied from the advisory Guidelines range, because the variance was rooted in a case-specific, individualized application of the § 3553(a) factors. In *United States v. Aaron Williams*, the panel reversed a district court's sentence because it varied from the advisory Guidelines range due overwhelmingly to a categorical rejection of clearly expressed congressional policy reflected in the Guidelines and did not base its sentence on a case-specific, individualized application of the § 3553(a) factors. Finally, in *United States v. Pope*, the panel affirmed a district court's sentence arrived at by applying the 100-to-1 ratio and not varying from the Guidelines for policy reasons. As shown above and explained in more detail below, this Circuit's precedent conforms to *Booker*, other circuits' holdings, and the principle of separation of powers.

In *United States v. Marcus Williams*, a panel of this Court correctly applied *Booker* and followed the principle of separation of powers. 435 F.3d 1350 (11th Cir. 2006). In *Marcus Williams*, the defendant was convicted of selling $350.00

13

of crack cocaine. *Id.* at 1351. After correctly calculating the Guidelines range, "the court turned to whether the circumstances of the particular case and the factors set forth in 18 U.S.C. § 3553 required a sentence within the advisory Guidelines range or allowed a sentence outside that range." *Id.* at 1352. The district court believed the Guidelines range did not "promote respect for the law and [was] way out of proportion to the seriousness of the offense and to [Williams'] prior criminal conduct." *Id.* at 1353. On appeal, this Court concluded the district court "weighed the factors in § 3553 and took into account Williams' individual history and the nature of the charge against him when it determined to sentence him to a lower term." *Id.* at 1355.

Specifically, this Court concluded this was not a case where the district court imposed a non-Guidelines sentence based on a categorical rejection of Congress's clearly expressed sentencing policy. *Id.* Rather, the district court gave case-specific, individualized reasons for sentencing below the advisory range. Accordingly, this Court's decision in *Marcus Williams* follows from *Booker* and the principle of separation of powers by distinguishing between a personal disagreement with Congress's clearly expressed sentencing policy as embedded in the Guidelines and "specific, valid reasons" for varying from the advisory Guidelines range. *Id.*

14

Similarly, in *United States v. Aaron Williams*, a panel of this Court faithfully applied *Booker* and followed the principle of separation of powers. 456 F.3d 1353 (11th Cir. 2006). At sentencing, the district court expressed its belief that the disparity between the Guidelines' treatment of crack cocaine offenders compared to powder cocaine offenders "smacks of discrimination" and the difference between the drugs "has never justified the substantial disparity in sentences." *Id.* at 1366 (internal quotations omitted). The panel concluded the district court "took into account its personal disagreement with Congress's judgment as to how much harsher the penalties for crack offenders should be." *Id.* Although the district court couched some of its arguments in the § 3553(a) factors, the panel concluded, and it continues to conclude, that the overwhelming reason behind the district court's sentence was its personal disagreement with and categorical rejection of clearly expressed congressional sentencing policy as embedded in the Guidelines.[3]

---

[3]Judge Barkett, in her dissent from the denial of rehearing en banc, states "[t]he majority would tell the district court that they don't believe its statement that it considered all of the statutory factors." Just the opposite is true. The panel did believe the statements of the district court and determined the district court used the factors as a vehicle to fashion a sentence based on its categorical rejection of congressional policy embedded in the U.S. Code and clearly reflected in the Guidelines. Instead of applying the factors in a case-specific, individualized fashion to determine a reasonable sentence, as *Booker* mandates, the district court applied the factors in an unreasonable manner by fashioning a sentence based on its rejection of clearly stated congressional policy.

This Court held that such considerations are impermissible factors for the district court's consideration at sentencing. *Id.* It is important to note that the panel agreed "that a sentence below the Guidelines range in a crack cocaine case may be reasonable, so long as it reflects the individualized case-specific factors in § 3553(a)." *Id.* at 1369. Again, this Court applied *Booker* and followed the principle of separation of powers. *Aaron Williams* is consistent with the precedent of our Circuit and the current holdings of our sister circuits. The panel of this Court distinguished between a district court's general disagreement with clearly expressed congressional policy embedded in the Guidelines as an invalid reason for varying from an advisory Guidelines range and using individualized and case-specific factors as valid reasons for varying from an advisory Guidelines range.

Finally, in *United States v. Pope*, this Court applied *Booker* and followed the precedent of this Court and the principle of separation of powers. 461 F.3d 1331 (11th Cir. 2006). In *Pope*, the defendant was convicted of possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (crack cocaine). *Id.* at 1333. On appeal, Pope argued the district court applied the 100-to-1 powder cocaine-to-crack cocaine ratio as mandatory. *Id.* The panel painstakingly parsed the difference between what is and what is not mandatory post-*Booker*. *Id.* at 1335–37. The panel explained the district court

16

must still correctly determine the advisory Guidelines range by using the 100-to-1 ratio. *Id.* at 1337. Yet, the district court must also be aware that the entire Guidelines system is advisory. *Id.* Again, this Court delineated the difference between varying from a Guidelines range based on a categorical rejection of Congress's clearly expressed policy embedded in the Guidelines and varying based on the case-specific and individualized facts of a given defendant's offense.

As the above discussion demonstrates, this Circuit follows *Booker* faithfully. This Circuit recognizes a district court may vary from an advisory Guidelines range for case-specific, individualized applications of the § 3553(a) factors. This Circuit concludes that varying from an advisory Guidelines range based on a categorical rejection of Congress's clearly expressed sentencing policy as embedded in the Guidelines and its statutes is error.

D.    The Dissent from the Denial of Rehearing *En Banc*

Judge Barkett's disagreement with the *Aaron Williams* decision derives from her review of the record. After reviewing the record, she concludes the district court "methodically evaluat[ed] the sentencing factors set forth in § 3553(a)." While this may be true, the district court must do more than simply couch, in the language of the § 3553(a) factors, its personal and categorical rejection of Congress's clearly expressed sentencing policy as embedded in the

17

Guidelines. The district court must apply § 3553(a) in a case-specific, individualized manner. The *Aaron Williams* panel, after an extensive review of the record, concluded, and continues to conclude, that the district court failed to engage in any case-specific, individualized assessment of the § 3553(a) factors. *Aaron Williams*, 456 F.3d at 1369.

In her dissent, Judge Barkett states that "[u]nder *Booker* and our governing precedent, a district court may 'disregard' the 100:1 crack-to-cocaine ratio if it properly calculates the guidelines range and sentences the defendant based on the *individual facts and circumstances* of the case" (emphasis added).[4] To the extent "disregard" means vary from the advisory Guidelines range, there is no disagreement between the *Aaron Williams* decision and Judge Barkett's statement of the law, and, therefore, no need to review this case *en banc. Booker* and our precedent allow variances from the advisory Guidelines range based on an individualized and case-specific application of the § 3553(a) factors, while forbidding variances based on categorical rejections of Congress's clearly

---

[4]Judge Barkett also suggests *Aaron Williams* is inconsistent with *United States v. Eldick*, 443 F.3d 783 (11th Cir. 2006). In *Eldick*, a panel of this Court correctly applied *Booker* and followed the principle of separation of powers. The panel reviewed the district court's determination that a sentence above the advisory Guidelines range was reasonable. *Id.* at 790. In so doing, the panel carefully noted that "[t]he district court . . . considered the § 3553(a) factors." *Id.* at 789. Moreover, the panel noted the particular case-specific, individualized factors that led to the variance. As shown above, *Eldick* is consistent with this Circuit's current holdings and faithfully follows *Booker*.

expressed, unambiguous sentencing policy embedded in the Guidelines. Judge Barkett correctly states the law, and this Court in its decisions correctly applied the law. It seems that Judge Barkett simply disagrees with the *Aaron Williams* panel's extensive review of the record.[5]

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

---

[5]In making her determination, Judge Barkett goes beyond the text of the *Marcus Williams* and *Aaron Williams* opinions and relies heavily on the sentencing hearing transcript in each case. In essence, Judge Barkett is disagreeing with the panel's determination in *Aaron Williams* that the overwhelming reason for the sentence was the district court's disagreement with clearly expressed congressional sentencing policy reflected in the Guidelines.

The panel in this case holds that a district court cannot disregard the 100:1 crack-cocaine ratio[1] based upon its determination that the ratio overstates the seriousness of *this* defendant's offense and is thus unreasonable under 18 U.S.C. § 3553(a). See United States v. Aaron Williams, 456 F.3d 1353 (11th Cir. 2006) ("Aaron Williams").[2] This holding conflicts with United States v. Booker, 543 U.S. 220 (2005), and specifically conflicts with our prior cases governing reasonableness review in which we have affirmed below-guidelines sentences for crack offenders based on the district court's disagreement with the guidelines. See, e.g., United States v. Marcus Williams, 435 F.3d 1350 (11th Cir. 2006) ("Marcus Williams"). It also conflicts with prior cases in which we have affirmed above-guidelines sentences based on the district court's personal judgment that the seriousness of the defendant's crime was not adequately reflected by the guidelines. See, e.g., United States v. Eldick, 443 F.3d 783 (11th Cir. 2006). Thus, I dissent from the denial of rehearing en banc.

As explained more fully below, the differentiation between crack cocaine

---

[1]The "100:1 crack-cocaine ratio" refers to the relative quantities of crack and powder cocaine required to trigger inclusion in a particular guidelines range. Congress requires one hundred times more powder cocaine than crack cocaine to trigger inclusion in a range. See 21 U.S.C. § 841(b)(1).

[2]See also United States v. Pope, 461 F.3d 1331(11th Cir. 2006) (following Aaron Williams).

20

and powder cocaine is simply a guideline. Under Booker, the recommended guideline range for crack cocaine must be considered like any other guideline range. That is, like all other guidelines, it *cannot* be considered mandatory; it *is* to be considered advisory; it *must* be considered in conjunction with all of the other factors listed in § 3553(a). There is nothing in Booker, the Sentencing Reform Act, nor in any other law that exempts the crack guidelines from the dictates of Booker. Accordingly, if a district court concludes, upon consideration of all of the § 3553(a) factors, that the crack guidelines overstate the seriousness of a particular defendant's offense, we may not reverse solely on the basis that the district court was obligated to follow the guidelines.

## I.

### The Effect of Booker

In Booker, the Court severed and excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act that made the guidelines mandatory, from the statute. See Booker, 543 U.S. at 245. After Booker, the Sentencing Reform Act requires that a sentencing court "impose a sentence sufficient, but not greater than necessary" to achieve the purposes of retribution, deterrence, public safety, and rehabilitation. The Act states that a sentencing court "shall consider" all of

21

the factors listed in § 3553(a). As is evident from the text of § 3553(a)(4), the guidelines are only *one* factor (and not even the first) that must be considered by a sentencing court. The central concern is that a sentencing court "impose a sentence sufficient, but not greater than necessary," to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes, and provide the defendant with treatment. As the Supreme Court said, the constitutionally required excision of § 3553(b)(1) "makes the Guidelines effectively advisory. It requires a sentencing court to *consider* Guidelines ranges, but *it permits the court to tailor the sentence in light of other statutory concerns as well*, see § 3553(a) (Supp. 2004)." Booker, 543 U.S. at 245-46 (citation omitted; emphasis added). Sentencing courts may no longer consider the guidelines range as mandatory and are now required to consider and evaluate *all* of the factors listed in § 3553(a) when fashioning a sentence.

## II.

### Our Prior Case Law

This Court's sentencing jurisprudence following Booker has generally observed the Supreme Court's prohibition of mandatory guidelines. We have required sentencing courts to first calculate correctly the guidelines range. Having

22

done so, "the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable." United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005); see also United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Based at least in part on our deferential standard of review, we have affirmed sentences above the guidelines range on the basis that the sentencing court considered the § 3553(a) factors and arrived at a "reasonable" sentence. See, e.g., Eldick, 443 F.3d 783; United States v. Valnor, 451 F.3d 744 (11th Cir. 2006). We have also affirmed sentences that depart downward from the guidelines range when the district court considers the § 3553(a) factors and arrives at a reasonable below-guidelines sentence. See, e.g., Marcus Williams, 435 F.3d 1450; United States v. Gray, 453 F.3d 1323 (11th Cir. 2006). Explication of a few of these decisions illustrates the principles that have guided our review of sentencing cases since Booker.

In Eldick, the defendant was convicted of healthcare fraud and distributing hydrocodone, and was sentenced to 180 months imprisonment. Although Eldick's guideline range called for 87 to 108 months, we affirmed the district court's sentence on the basis that the district court "considered the § 3553(a) factors, including the guidelines and the policy statements of the Sentencing Commission,

23

and found that the guidelines range was 'inadequate' because it failed to grasp the full significance and breadth of harm inflicted by Eldick's actions." 443 F.3d at 790-91. Thus we permitted the district court to impose a sentence far above the guidelines range, accepting the court's reasoning that the guidelines did not "adequately take into account the severity of the damage done by Mr. Eldick, and, therefore . . . should not be applied." Id. at 788.

In Marcus Williams, the defendant was a career offender convicted of selling $350 worth of crack cocaine. 435 F.3d at 1351. The district court imposed a sentence of 90 months imprisonment, which was well below the applicable guidelines range of 188 to 235 months. Id. at 1353. The district court explained at the defendant's sentencing hearing: "[N]ow that I have some discretion, what I'm suggesting here is that in this particular instance, the guidelines . . . do not produce a just and reasonable result." The court stated, "I have real problems with [the] guidelines, because . . . if we apply the chapter four enhancement, career criminal enhancement, he goes up to a 31, six, which is 188 to 235 months. . . . This is the type of guidelines application, mechanistic application of a guideline that I think is the situation where the guidelines themselves just totally miss the mark and are inappropriate."

We affirmed, explaining that "the district court's statements over the course

24

of the sentencing hearing show it weighed the factors in § 3553 and took into account Williams' individual history and the nature of the charge against him when it determined to sentence him to a lower term." Id. at 1355. We noted that Marcus Williams was:

> not a case where the district court imposed a non-Guidelines sentence based solely on its disagreement with the Guidelines. In this case, the district court correctly calculated the Guidelines range and gave specific, valid reasons for sentencing lower than the advisory range. Applying the principles of review in light of the § 3553(a) factors and the reasons given by the district court, the 90-month sentence imposed was reasonable.

Id.[3]

Both Eldick and Marcus Williams are consistent with the deferential standard of review we have articulated in our sentencing cases. See, e.g., Talley, 431 F.3d at 788. The decisions also demonstrate strict observance of the Supreme Court's mandate in Booker that the guidelines be treated as advisory.

---

[3]The Third Circuit has since cited United States v. Marcus Williams for the proposition that the Courts of Appeal have *not* unanimously rejected a court's decision to sentence below the guidelines range in crack-cocaine cases. See United States v. Gunter, No. 05-2952, --- F.3d ----, 2006 WL 2589149, at *6 (3d Cir. Sept. 11, 2006). The Third Circuit suggests that Marcus Williams stands for the proposition that district courts may take the guidelines' crack/powder cocaine differential into consideration and ultimately impose a non-guidelines sentence. Id. Additionally, in United States v. Daniels, No. 05-10432, 2005 WL 2114158 (11th Cir. Sept. 2, 2005), we held that consideration of the drug involved was a valid factor in the district court's § 3553(a) analysis. As the Third Circuit explained, citing our cases as precedent, "consideration of the drug involved (*i.e.*, crack cocaine, powder cocaine, heroin, *et al.*) as a sentencing factor is *proper and encouraged* in the post-*Booker* regime." United States v. Gunter, No. 05-2952, --- F.3d ----, 2006 WL 2589149, at *7 (3d Cir. Sept. 11, 2006) (emphasis added; citing Marcus Williams, 435 F.3d at 1354-55).

**III.**

*Aaron Williams*: The Case At Issue

The opinion in the case at issue here, Aaron Williams, is in direct tension with its predecessors and departs from our compliance with Booker. Aaron Williams reverses a sentence below the guidelines range on the basis that the district court considered an improper factor in conducting its reasonableness review under § 3553(a);  however, that "impermissible factor" is simply the district court's judgment that the recommended guideline sentence in this case, which applied the 100:1 crack-cocaine ratio, would have been "greater than necessary" to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes, and provide the defendant with treatment.

Aaron Williams was convicted of possessing crack cocaine with intent to distribute. Although the guidelines advised a range of 360 months to life imprisonment, the district court sentenced Williams to 204 months imprisonment. Both at the sentencing hearing and in a written Memorandum Sentencing Opinion issued after the hearing, the district court explained the basis for its sentence, methodically evaluating the sentencing factors set forth in § 3553(a).  The district court stated that its analysis was compelled by the central instruction from

26

Congress that sentencing judges "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." The district court then explained that it arrived at the sentence imposed by "consider[ing] the guidelines on an advisory basis in the context of the statutory factors set forth in 18 U.S.C. [§] 3553."

Although the district court expressed frustration in its sentencing opinion regarding the 100:1 crack-cocaine disparity,[4] the court went on to explain the individual circumstances of the particular defendant that contributed to its sentencing decision: "With respect to Williams, the Court has already alluded to the nature and seriousness of the offense and Williams' criminal history. In short, Williams is a low-level drug dealer and was convicted of selling relatively small amounts of crack cocaine." The district court found that sentencing Williams to a

---

[4] The ratio has been subject to widespread criticism almost since its inception. The Sentencing Commission itself has concluded that the 100:1 powder to crack ratio produces sentences that are greater than necessary to satisfy the purposes of punishment. According to the Commission, the 100:1 ratio exaggerates the relative harmfulness of crack cocaine and the majority of crack offenses involve low drug quantities, no violence, and defendants with low criminal histories. This differential in sentencing creates an unwarranted disparity that has been correlated with racial disparities and that undermines the public confidence in the criminal justice system. See, e.g., U.S. Sentencing Comm'n, Report to the Congress: Cocaine and Federal Sentencing Policy, at 91, 102-103 (2002) (declaring "firmly and unanimously" that the 100:1 drug quantity ratio "is unjustified and fails to meet the sentencing objectives set forth by Congress"); U.S. Sentencing Comm'n, Special Report to the Congress: Cocaine and Federal Sentencing Policy, at 2 (1997) ("[A]lthough research and public policy may support somewhat higher penalties for crack than for powder cocaine, a 100-to-1 quantity ratio cannot be justified."); U.S. Sentencing Comm'n, Special Report to Congress: Cocaine and Federal Sentencing Policy (1995).

dramatically higher sentence based effectively on the government's decision to purchase crack cocaine rather than powder cocaine would undermine public confidence in the law. The district court's ultimate decision rested upon a balancing of the § 3553(a) factors with respect to the particular defendant before the court:

> In short, a sentence of 30 years to life would not provide just punishment. Rather, such a harsh sentence would be totally out of character with the seriousness of this offense and is not necessary to afford adequate deterrence to criminal conduct or to protect the public from further crimes by this Defendant. Rather than promoting respect for the law, a guideline sentence would have the opposite effect.

On the basis of this analysis, the district court sentenced the defendant to 204 months imprisonment. The court continued:

> In considering all of the statutory factors, including the sentencing guidelines, the Court imposes a sentence of 204 months. This is a substantial term for a relatively minor offense. But, given the circumstances (crack versus powder cocaine) and Williams' long history of selling illegal drugs, a lengthy sentence is warranted. A guidelines sentence, however, is not.

Based on my review of these cases, I fail to see how Aaron Williams differs in any material way from both Marcus Williams[5] and Eldick. In Eldick, the district court's sentence above the guidelines range was based upon the court's

_____

[5]Indeed, Aaron Williams involved the *same district judge* as Marcus Williams, who imposed a below-guidelines sentence for the *same offense* as in Marcus Williams, and who voiced the *same type of criticism* of the guidelines as in Marcus Williams.

28

assessment that "the guidelines range was 'inadequate' because it failed to grasp the full significance and breadth of harm inflicted by Eldick's actions." 443 F.3d at 789-90. The district court explicitly stated that it felt the guidelines "should not be applied" because they did "not adequately take into account the severity of the damage done by [the defendant]." We cited that statement with approval. Id. at 788 n.2. In Marcus Williams, we again affirmed a sentence outside the guidelines range, notwithstanding the district court's statements that the guidelines "do not produce a just and reasonable result" and were "unreasonable" in that case.

The judges concurring in the denial of rehearing en banc concede that the district court evaluated the sentencing factors set forth in § 3553(a), but nevertheless would reverse the district court because, they claim, "the district court must do more than simply couch, in the language of the § 3553(a) factors, its personal and categorical rejection of Congress's clearly expressed sentencing policy as embedded in the Guidelines." The majority essentially would tell the district court that they don't believe its statement that it considered all of the statutory factors. This scrutiny of the statements of a district court judge is unprecedented in our sentencing jurisprudence; in every other context, we take the statements of a district court at face value. See, e.g., United States v. Scott, 426 F.3d 1324, 1330 (11th Cir. 2005) (stating that "the district court explicitly

29

acknowledged that it had considered Scott's arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-Booker sentences."); Talley, 431 F.3d at 786 ("[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker.").

The panel in Aaron Williams explains that it did not take the statements of the district court at face value because, elsewhere in the sentencing memorandum, the district court stated its "personal disagreement with Congress's judgment as to how much harsher the penalties for crack offenders should be." 456 F.3d at 1366. I can think of no other context in which we reverse a district court for its dicta rather than the stated basis for its decision. We are not in the business of censoring the district courts when those courts have stated explicitly that they have followed the statutory mandate of § 3553. Furthermore, the panel opinion has the perverse effect of discouraging district court judges from stating the reasons for imposing sentence—the less they say, the less that can be used as a basis to reverse them. This result is inconsistent with the candor to which our criminal justice system otherwise aspires. See, e.g., 18 U.S.C. § 3553(c)(1) (requiring the court, at the time of sentencing, to "state in open court the reasons for its imposition of the particular sentence").

Ultimately, I disagree with the substance of this Court's suggestion that a district court may not sentence crack offenders "in a manner inconsistent with Congress's intent as expressed in the Guidelines."[6] The panel in Aaron Williams suggests that the crack guidelines are always mandatory when it states that "[f]ederal courts are not at liberty to supplant [the 100:1 drug quantity ratio]." 456 F.3d at 1367. I believe this is an express violation of Booker, which commanded district courts to comply with the post-Booker § 3553(a). The panel in Aaron Williams has essentially faulted the district court for its compliance with the fundamental requirement of § 3553(a)—to arrive at a sentence no greater than is

---

[6] See United States v. Pope, 461 F.3d 1331 (11th Cir. 2006), which relied on Aaron Williams. The defendant in Pope argued that the 100:1 drug quantity ratio was excessive as applied in his case. The district court declined to consider that argument in its 3553(a) analysis. The panel, relying heavily on Aaron Williams, held that "the district court did not err by rejecting Pope's argument that it could disregard the 100:1 crack-to-cocaine ratio as part of its calculation of a reasonable sentence under 18 U.S.C. § 3553(a)." Id. at 1337. Of course, a district court may not completely disregard the ratio, but that was not Pope's argument. His argument was that the district court is permitted to consider the drug involved as one factor in its analysis whether a sentence is reasonable as applied to a particular defendant; in some cases, he argued, a guidelines sentence will be unreasonable.

The panel opinion in Pope is tantamount to a holding that the guidelines are mandatory because § 3553(a)(4)—the factor requiring consideration of the guidelines—is to supersede the other factors no matter what. The panel explained that, notwithstanding Booker, "the district court remains obligated to calculate the correct Guidelines range, and as part of that obligation, the court may not disregard individual Guidelines or construe them in a manner inconsistent with Congress's intent as expressed in the Guidelines, even if the ultimate range based on those Guidelines is advisory in nature." Id. This statement is confounding because the Court held in Booker that Congress's intent, as expressed in the Sentencing Reform Act's imposition of mandatory guidelines, was unconstitutional. If Congressional intent, as embodied in the sentencing guidelines' "Drug Quantity Table," is to *always* supercede all other § 3553(a) factors, then Booker is rendered meaningless in such cases.

31

necessary.

Congress's judgment regarding the penalties for crack offenders are reflected in the sentencing guideline range, which cannot be imposed mandatorily without violating the Constitution. This Court is not free to ignore Booker's fundamental holding by requiring blind adherence to the crack guidelines.

Booker requires that a sentencing court consider all of the factors listed in § 3553(a), not just the suggested guideline. Section 3553(a) requires a sentencing court to balance all of the enumerated factors in arriving at a sentence that is sufficient, but not greater than necessary, to fulfill the purposes listed in § 3553(a)(2). Congress did not create an exception to § 3553(a) for crack offenses, nor did the Supreme Court in Booker. Sentencing courts must arrive at a sentence that is "reasonable," whether sentencing a crack offense or any other offense. This remains true even though Congress has not elected to change the crack guidelines, notwithstanding numerous recommendations by the Commission to the contrary. See Aaron Williams, 456 F.3d at 1365-66.

Accordingly, under Booker and the post-Booker Sentencing Reform Act, a sentencing court is not only *permitted* but is *required* to evaluate the propriety of applying the 100:1 crack-cocaine ratio in a particular case. As Judge Michael recently stated:

> While the Commission's findings alone cannot justify a below-guidelines sentence, in certain cases they can help sentencing courts analyze the § 3553(a) factors and select a sentence that is 'sufficient, but not greater than necessary' to punish, deter, and rehabilitate the defendant. The Commission's findings, in other words, can be considered insofar as they are *refracted through* an individual defendant's case.

United States v. Eura, 440 F.3d 625, 637 (4th Cir. 2006) (Michael, J., concurring)

(citations omitted).[7]  The Third Circuit's recent approach in Gunter is very similar:

> [O]nce between the minimum and maximum statutory ranges of 21 U.S.C. § 841(b), there is nothing special about the crack cocaine Sentencing Guidelines that makes them different, or less advisory, than any other Guidelines provision . . . .
>
>   Post-*Booker* a sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines — but not demanded by 21 U.S.C. § 841(b) — as simply advisory at step three of the post-*Booker* sentencing process (imposing the actual sentence after considering the relevant § 3553(a) factors) . . . .
>
>   Of course, the District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential.  Furthermore . . . we do not suggest (or event hint) that the Court categorically reject the 100:1 ratio and substitute its own, as this is *verboten*.  The limited holding here is that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the

---

[7] After Booker, a number of courts have imposed sentences below the range in crack cocaine cases in light of the Commission's conclusions, the facts and circumstances of the case, and the history and characteristics of the defendant.  E.g., United States v. Perry, 389 F. Supp. 2d 278, 303-08 (D.R.I. 2005) (noting that to disregard the Sentencing Commission's findings because Congress failed to adopt them would raise serious Booker concerns); Simon v. United States, 361 F. Supp. 2d 35, 44-49 (E.D.N.Y. 2005); United States v. Harris, 2005 U.S. Dist. LEXIS 3958, at *10-*11 (D.D.C. Mar. 7, 2005); United States v. Smith, 359 F. Supp. 2d 771, 777-82 (E.D. Wis. 2005).

post-*Booker* sentencing process.

2006 WL 2589149, at \*10-\*11.

Under Booker and our governing precedent, a district court may "disregard" the 100:1 crack-to-cocaine ratio if it properly calculates the guidelines range and sentences the defendant based on the individual facts and circumstances of the case. To the extent that Aaron Williams conflicts with that proposition, I dissent from our denial of rehearing en banc.