[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 22, 2006
THOMAS K. KAHN
CLERK

No. 05-11552
Non-Argument Calendar

_____

D. C. Docket No. 04-00035-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

COREY LEAMONT POPE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(August 22, 2006)**

Before CARNES, MARCUS and PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

Corey Leamont Pope appeals his concurrent 262-month sentences for possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (i.e., crack cocaine), in violation of 21 U.S.C. § 841(a)(1),

(b)(1)(A)(iii), and possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). First, Pope argues that his sentence violated United States v. Booker, 543 U.S. 220 (2005), because the district court made factual findings, without a jury, on the amount of crack cocaine attributable to Pope for sentencing purposes, and then treated the Sentencing Guidelines' 100:1 crack-to-cocaine ratio[1] as mandatory in imposing sentence. Second, Pope contends that if the 100:1 ratio is mandatory, application of the ratio, in light of Booker, violates separation-of-powers principles by encroaching on the judiciary's sentencing role and vesting the prosecutor with the power to punish. After careful review, we affirm.

I.

We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005). Pursuant to the Supreme Court's instructions in Booker, we review a defendant's ultimate sentence, imposed after the district court has consulted the Guidelines and considered the factors set forth at 18 U.S.C. §

---

[1] "Under 21 U.S.C. § 841 and § 2D1.1 of the Sentencing Guidelines, a defendant convicted of an offense involving 'cocaine base' (i.e., crack cocaine) faces a longer possible sentence than a defendant convicted of an offense involving the same amount of powder cocaine, a chemically-similar substance. This disparity is commonly referred to as the '100-to-1' ratio, so named because of the relative quantities of each drug required to trigger the mandatory sentencing ranges in § 841(b)." United States v. Williams, 2006 WL 2039993, at *7 (11th Cir. Jul. 21, 2006) (footnote omitted).

3553(a), for reasonableness. Booker, 543 U.S. at 264-65; United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006) ("Under Booker, we review a defendant's ultimate sentence for reasonableness."); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Our reasonableness review is "deferential" and focuses on whether the sentence imposed fails to achieve the purposes of sentencing as stated in § 3553(a). United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, we recognize that a range of reasonable sentences exists from which the district court may choose. Id. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

"We review constitutional challenges to a sentence de novo." United States v. Chau, 426 F.3d 1318, 1321 (11th Cir. 2005). And we will reverse only upon a finding of harmful error based on the constitutional challenge. United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2000) (reviewing preserved constitutional challenge to a sentence de novo, but stating that we "will reverse or remand only for harmful error").

## II.

The relevant facts are straightforward. On July 21, 2004, Pope was charged in a superseding indictment with two counts of possessing crack cocaine with

intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii).  Count One charged an offense that occurred on January 24, 2004, and "involved fifty (50) grams or more" of crack.  Count Two charged an offense that occurred on January 15, 2004, and "involved five (5) grams or more" of crack.  After a two-day trial, the jury found Pope guilty on both counts and returned a special verdict finding that Count One involved fifty grams or more of crack and Count Two involved five grams or more of crack.  Pope then proceeded to sentencing.

The presentence investigation report ("PSI") stated that authorities obtained a search warrant for the residence of co-defendant Demetrius Deon Whitsett.[2]  The search came after the Drug Enforcement Administration ("DEA") conducted the following series of purchases of controlled substances from Pope and Whitsett in January 2004: (1) on January 7, 1.8 grams of crack cocaine; (2) on January 9, 1.8 grams of crack cocaine; and (3) on January 15, 46 grams of crack cocaine.

During the search of Whitsett's residence, authorities recovered a total of 442 grams of crack cocaine.  At the time of the search, Pope and Whitsett both were present and gave statements to authorities, admitting that they traveled to Atlanta, Georgia, where they purchased powder cocaine, and returned to

---

[2]Whitsett was charged with the same offenses in the original indictment but pled guilty and testified for the government at Pope's trial on the charges in the superseding indictment, which named only Pope.

Panama City, Florida, where they converted the powder to crack cocaine. Whitsett also stated that he had purchased a total of 27 ounces (765.45 grams) of powder cocaine in Atlanta. The PSI applied an 80% conversion rate -- the 765.45 grams of powder cocaine converted to 612.36 grams of crack cocaine. Finally, the PSI grouped Counts One and Two, pursuant to U.S.S.G. § 3D1.2(d). See United States Sentencing Commission, Guidelines Manual, § 3D1.2(d) (Nov. 2004).

Based on U.S.S.G. § 2D1.1(c)(2), for an offense involving 612.36 grams of crack cocaine, Pope's base offense level was 36. With a criminal history category IV (based on eight criminal history points), Pope faced a Guidelines range of 262 to 327 months' imprisonment. Pope's statutory ranges were 10 years' to life imprisonment on Count One, and 5 to 40 years' imprisonment on Count Two. See 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii).

Pope objected to being held responsible for more than the amount found by the jury in its special verdict. He also challenged the constitutionality of the Sentencing Guidelines. At the sentencing hearing, Pope again objected to the amount of crack cocaine attributed to him and argued that after the Supreme Court's Booker decision, the district court was not required to apply the 100:1 crack-to-cocaine ratio in a mandatory manner.

5

The district court rejected Pope's arguments, noting that according to this Court's post-Booker precedent, a sentencing court retained the authority to impose extra-verdict enhancements based on judicial fact-finding under a preponderance-of-the-evidence standard. The district court then adopted the PSI's facts and calculations and sentenced Pope to concurrent 262-month sentences for Counts One and Two, noting that the Guidelines range was advisory and the sentence was at the low end of that range and reflective of the court's consideration of factors listed in 18 U.S.C. § 3553(a). This appeal followed.

### III.

Pope argues that the district court erred by treating the 100:1 ratio as mandatory in light of Booker. He suggests that absent a jury finding on the amount of drugs attributed to him, at sentencing, the district court was required to apply the 100:1 ratio in an advisory fashion. We disagree.

As a preliminary matter to our analysis, we note three points that now are well-settled after Booker. First, so long as the district court applies the Guidelines as advisory, nothing in Booker prevents the court from making additional factual findings, under a preponderance-of-the-evidence standard, that go beyond the facts found by the jury. See Chau, 426 F.3d at 1323-24; see also United States v. Ndiaye, 434 F.3d 1270, 1300 (11th Cir. 2006) (noting that "when a defendant

6

challenges a factual basis of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence"); United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005) (holding that for purposes of Guidelines sentence calculation, government bears burden of establishing disputed fact by preponderance of the evidence). Second, the district court remains obligated to consult and correctly calculate the Guidelines, after which it may impose a more severe or more lenient sentence as long as it is reasonable. United States v. McVay, 447 F.3d 1348, 1353 (11th Cir. 2006); Crawford, 407 F.3d 1174 at 1178-79 (holding that "Booker did not affect 18 U.S.C. section 3742(f), which mandates remand of any case in which the sentence was imposed as a result of an incorrect application of the sentencing guidelines" and "the requirement of consultation [of the correctly calculated Guidelines range] itself is inescapable") (internal quotation marks omitted). Finally, in determining a reasonable sentence, the district court must consider the correctly calculated Guidelines sentencing range and the factors set forth in 18 U.S.C. § 3553(a). See Booker, 543 U.S. at 258-64; Talley, 431 F.3d at 786.

"In Booker, the Supreme Court held the Sixth Amendment right to trial by jury is violated where, under a mandatory guidelines system, a sentence is increased because of an enhancement based on facts found by the judge that were

7

neither admitted by the defendant nor found by the jury. It is not error, however, to use . . . extra-verdict enhancements in a non-mandatory guidelines system." United States v. Cain, 433 F.3d 1345, 1347 (11th Cir. 2005) (alteration in original) (internal quotation marks and citations omitted). So long as the district court indicated that it understood the Guidelines to be advisory, no reversible error exists.

The Sentencing Guidelines' "Drug Quantity Table" provides that when calculating the Guidelines range, the district court should assign the same base offense level of 36 to a defendant responsible for either "[a]t least 50 KG but less than 150 KG of Cocaine," or "[a]t least 500 G but less than 1.5 KG of Cocaine Base." U.S.S.G. § 2D1.1(c)(2). Prior to Booker, we consistently rejected challenges to the 100:1 crack-to-cocaine ratio because "[t]he fact that crack cocaine is more addictive, more dangerous, and can be sold in smaller quantities than powder cocaine is sufficient reason for Congress to provide harsher penalties for its possession." United States v. King, 972 F.2d 1259, 1260 (11th Cir. 1992); United States v. Byse, 28 F.3d 1165, 1170 n.9 (11th Cir. 1994) ("[C]ocaine base is simply a different drug than cocaine powder, with a different chemical composition; as a result, Congress can justifiably provide for different penalties for each." (alteration in original) (internal quotation marks omitted)). In United States

v. Hanna, 153 F.3d 1286 (11th Cir. 1998), we expressly adhered to our precedent in King and pointed out that in 1995, when the Sentencing Commission decided to eliminate the sentencing disparity between crack and powder cocaine offenses, Congress overrode the decision by legislative fiat, disapproving of the Sentencing Commission's action and directing that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine." Id. at 1288–89 (quoting Federal Sentencing Guidelines, Amendment, Disapproval, Pub. L. No. 104-38, 109 Stat. 334 (1985)). So the disparity in the crack-to-cocaine ratio is best characterized as the result of a judgment by Congress, not by the Sentencing Commission.

And after Booker, we again have rejected the very argument Pope makes here. In United States v. Williams, --- F.3d ---, 2006 WL 2039993 (11th Cir. Jul. 21, 2006), we held that a district court's disagreement with the penalties for crack cocaine offenders relative to powder cocaine offenders was an improper basis upon which to depart from a properly calculated Guidelines range under 18 U.S.C. § 3553(a). By mitigating the defendant's sentence based on the court's own personal disagreement with the 100:1 ratio, "the district court impermissibly usurped Congress's authority to set sentencing policy and failed to properly consider § 3553(a)(6)'s directive to avoid unwarranted sentence disparities between similarly

9

situated defendants." Id. at *11. We agreed with the Fourth Circuit's observation that allowing a district court's personal disagreement with the Guidelines to play a role in the § 3553(a) analysis would "'subvert Congress' clearly expressed will" and "certainly does not promote respect for the law, provide just punishment for the offense of conviction, or result in a sentence reflective of the offense's seriousness as deemed by Congress." Id. (quoting United States v. Eura, 440 F.3d 625, 633 (4th Cir. 2006)).

Our reasoning in Williams is consistent with the decisions of other circuit courts that have addressed the 100:1 ratio's constitutionality post-Booker, holding that district courts do not have the authority to alter the ratio. See United States v. Pho, 433 F.3d 53, 63 (1st Cir. 2006) (holding, under reasonableness review, that "the district court's categorical rejection of the 100:1 ratio impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses"); United States v. Cawthorn, 429 F.3d 793, 802–03 (8th Cir. 2005) (rejecting the argument that "it was error for the court not to sentence outside the Guidelines range because it is always unreasonable to treat crack cocaine 100 times worse than powder cocaine"); see also United States v. Martin, 438 F.3d 621, 636 (6th Cir. 2006) (rejecting, post-Booker, a challenge to the DEA's drug conversion ratio based on pre-Booker precedent that "reject[ed] the argument that the 100-to-1

10

crack-cocaine-to-powder ratio was unconstitutionally arbitrary" due to a difference within the scientific community about the addictive nature of the different drugs). The most recent circuit to join this group was the Second Circuit, which stated, in United States v. Castillo, No. 05-3454 (2d Cir. Aug. 16, 2006), that "[w]hile the 100:1 ratio clearly produces a disparity, it is one that Congress has mandated, one that Congress has continually refused to alter, despite the Sentencing Commission's various proposals for eliminating or reducing the ratio. '[A] sentencing disparity intended by Congress is not unwarranted.'" Id., slip op. 35–36 (quoting United States v. Duhon, 440 F.3d 711, 720 (5th Cir. 2006)) (second alteration in original).

Here, Pope's argument that the district court was free to disregard the 100:1 ratio in calculating his Guidelines range or as part of its 18 U.S.C. § 3553(a) analysis is without merit. Simply put, the district court remains obligated to calculate the correct Guidelines range, and as part of that obligation, the court may not disregard individual Guidelines or construe them in a manner inconsistent with Congress's intent as expressed in the Guidelines, even if the ultimate range based on those Guidelines is advisory in nature. We discern no error in the district court's calculation of the Guidelines range in this case, including its use of the 100:1 crack-to-cocaine ratio of the Drug Quantity Table. And the district court did

11

not err under Booker because it clearly indicated that it understood the Guidelines system was advisory. See Cain, 433 F.3d at 1348-49. Finally, pursuant to our recent decision in Williams, the district court did not err by rejecting Pope's argument that it could disregard the 100:1 crack-to-cocaine ratio as part of its calculation of a reasonable sentence under 18 U.S.C. § 3553(a).

IV.

We likewise are unpersuaded by Pope's argument that application of the 100:1 ratio violates separation-of-powers principles by reposing judicial power in the executive branch. Although we have not considered this argument in the context of the 100:1 ratio, we unambiguously have upheld the constitutionality of the statutory sentencing enhancement for prior convictions under 21 U.S.C. § 851. "[T]he power of the prosecutor under § 851 to increase the mandatory minimum sentence facing the defendant is no greater than the classic power of the executive to choose between charges carrying different mandatory penalties." See United States v. Cespedes, 151 F.3d 1329, 1335 (11th Cir. 1998). We have explained, in the context of a prosecutor's power under § 851 to increase a defendant's mandatory minimum sentence by filing an information, "the very decision whether to prosecute under § 841(a)(1) rather than, for example, under § 843 (telephone count) necessarily carries with it profound sentencing implications." Id. at 1333.

12

"Thus, rather than delegating legislative power, § 851 affords prosecutors a power no greater than that traditionally exercised by the executive branch in the charging decision." Id.

In Cespedes, we recognized that, as part of the sentencing procedure, the district court still had to determine whether the defendant in fact had any prior convictions. See id. at 1334. Moreover, we also noted the constitutionality of "the power of the prosecutor to influence the sentence available to the court" inherent in the prosecution's decision whether to move for substantial assistance, pursuant to U.S.S.G. § 5K1.1 and within the statutory parameters of 18 U.S.C. § 3553(e). See id. at 1333-34.

Pope's argument that application of the 100:1 ratio somehow encroaches upon the judicial branch's power by giving the prosecution the power to punish drug offenders is unpersuasive. Again, after Booker, the district court must correctly calculate the Guidelines range, including applying § 2D1.1 in appropriate cases, but ultimately has the discretion to impose a sentence above or below that range based on the factors listed in § 3553(a). See Crawford, 407 F.3d at 1178-79. The court may not consider as one of those factors § 2D1.1(c)'s disparate treatment of crack and cocaine. See Williams, 2006 WL 2039993 at *11; Eura, 440 F.3d at 633-34. This Congress has made clear. This case no more involves a violation of

13

separation of powers than a regime that allows the prosecutor to choose the charge (whether providing for a mandatory sentence or not) or one that permits, but does not compel, a prosecutor to file an enhancement under § 851. At the end of the day, the court -- not the prosecutor -- applies a sentencing regime according to the rules prescribed by the legislative branch.

This is also not a case where either the executive branch or the judicial branch has exceeded the role accorded to it under the scheme duly enacted by Congress. Considering an independent counsel statute in Morrison v. Olson, 487 U.S. 654 (1988), the Supreme Court noted that separation of powers does not prescribe a specific, immutable allocation of powers among the three branches of government. See id. at 693–94 ("[W]e have never held that the Constitution requires that the three branches of Government 'operate with absolute independence.'") The Court noted that the statute did not violate separation-of-powers principles because although it undoubtedly reordered the roles of the three coordinate branches, the scheme did not increase Congress's power at the expense of another branch, did not exceed Congress's constitutional authority to allocate certain executive functions to the judiciary, and did not impermissibly undermine executive authority. Id. at 693–96. The statute at issue in Morrison authorized a special court to appoint independent counsel. The Court found that this scheme,

though unusual, was within Congress's power under the Appointments Clause, and both the executive branch and the judicial branch performed their traditional functions within the scheme. See id. at 695. Similarly, in this case, Congress has created a sentencing scheme within its authority to prescribe (by codifying the 100:1 crack-to-cocaine ratio), and within that scheme, the prosecution and the judiciary continue to perform their traditional roles. Neither has assumed a power quintessentially belonging to the other; both are bound by the penalties enacted by the legislative branch.

Accordingly, we affirm the 262-month sentences imposed by the district court.

**AFFIRMED.**