BARKETT, Circuit Judge,
dissenting from the denial of rehearing en banc:
The panel in this case holds that a district court cannot disregard the 100:1 crack-cocaine ratio[1] based upon its determination that the ratio overstates the seriousness of this defendant’s offense and is thus unreasonable under 18 U.S.C. § 3553(a). See United States v. Aaron Williams, 456 F.3d 1353 (11th Cir.2006) (“Aaron Williams”).[2] This holding conflicts with United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and specifically conflicts with our prior cases governing reasonableness review in which we have affirmed below-guidelines sentences for crack offenders based on the district court’s disagreement with the guidelines. See, e.g., United States v. Marcus Williams, 435 F.3d 1350 (11th Cir.2006) (“Marcus Williams”). It also conflicts with prior cases in which we have affirmed above-guidelines sentences based on the district court’s personal judgment that the seriousness of the defendant’s crime was not adequately reflected *843 by the guidelines. See, e.g., United States v. Eldick, 443 F.3d 783 (11th Cir.2006). Thus, I dissent from the denial of rehearing en banc.
As explained more fully below, the differentiation between crack cocaine and powder cocaine is simply a guideline. Under Booker, the recommended guideline range for crack cocaine must be considered like any other guideline range. That is, like all other guidelines, it cannot be considered mandatory; it is to be considered advisory; it must be considered in conjunction with all of the other factors listed in § 3553(a). There is nothing in Booker, the Sentencing Reform Act, nor in any other law that exempts the crack guidelines from the dictates of Booker. Accordingly, if a district court concludes, upon consideration of all of the § 3553(a) factors, that the crack guidelines overstate the seriousness of a particular defendant’s offense, we may not reverse solely on the basis that the district court was obligated to follow the guidelines.
I.
The Effect of Booker
In Booker, the Court severed and excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act that made the guidelines mandatory, from the statute. See Booker, 543 U.S. at 245, 125 S.Ct. 738. After Booker, the Sentencing Reform Act requires that a sentencing court “impose a sentence sufficient, but not greater than necessary” to achieve the purposes of retribution, deterrence, public safety, and rehabilitation. The Act states that a sentencing court “shall consider” all of the factors listed in § 3553(a). As is evident from the text of § 3553(a)(4), the guidelines are only one factor (and not even the first) that must be considered by a sentencing court. The central concern is that a sentencing court “impose a sentence sufficient, but not greater than necessary,” to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes, and provide the defendant with treatment. As the Supreme Court said, the constitutionally required excision of § 3553(b)(1) “makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004).” Booker, 543 U.S. at 245-46, 125 S.Ct. 738 (citation omitted; emphasis added). Sentencing courts may no longer consider the guidelines range as mandatory and are now required to consider and evaluate all of the factors listed in § 3553(a) when fashioning a sentence.
II.

Our Prior Case Law

This Court’s sentencing jurisprudence following Booker has generally observed the Supreme Court’s prohibition of mandatory guidelines. We have required sentencing courts to first calculate correctly the guidelines range. Having done so, “the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable.” United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir.2005); see also United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005).
Based at least in part on our deferential standard of review, we have affirmed sentences above the guidelines range on the basis that the sentencing court considered the § 3553(a) factors and arrived at a “reasonable” sentence. See, e.g., Eldick, 443 F.3d 783; United States v. Valnor, 451 F.3d 744 (11th Cir.2006). We have also affirmed sentences that depart downward from the guidelines range when the district court considers the § 3553(a) factors *844 and arrives at a reasonable below-guidelines sentence. See, e.g., Marcus Williams, 435 F.3d 1450; United States v. Gray, 453 F.3d 1323 (11th Cir.2006). Explication of a few of these decisions illustrates the principles that have guided our review of sentencing cases since Booker.
In Eldick, the defendant was convicted of healthcare fraud and distributing hydro-codone, and was sentenced to 180 months imprisonment. Although Eldick’s guideline range called for 87 to 108 months, we affirmed the district court’s sentence on the basis that the district court “considered the § 3553(a) factors, including the guidelines and the policy statements of the Sentencing Commission, and found that the guidelines range was ‘inadequate’ because it failed to grasp the full significance and breadth of harm inflicted by Eldick’s actions.” 443 F.3d at 790-91. Thus we permitted the district court to impose a sentence far above the guidelines range, accepting the court’s reasoning that the guidelines did not “adequately take into account the severity of the damage done by Mr. Eldick, and, therefore ... should not be applied.” Id. at 788.
In Marcus Williams, the defendant was a career offender convicted of selling $350 worth of crack cocaine. 435 F.3d at 1351. The district court imposed a sentence of 90 months imprisonment, which was well below the applicable guidelines range of 188 to 235 months. Id. at 1353. The district court explained at the defendant’s sentencing hearing: “[N]ow that I have some discretion, what I’m suggesting here is that in this particular instance, the guidelines ... do not produce a just and reasonable result.” The court stated, “I have real problems with [the] guidelines, because ... if we apply the chapter four enhancement, career criminal enhancement, he goes up to a 31, six, which is 188 to 235 months .... This is the type of guidelines application, mechanistic application of a guideline that I think is the situation where the guidelines themselves just totally miss the mark and are inappropriate.”
We affirmed, explaining that “the district court’s statements over the course of the sentencing hearing show it weighed the factors in § 3553 and took into account Williams’ individual history and the nature of the charge against him when it determined to sentence him to a lower term.” Id. at 1355. We noted that Marcus Williams was:
not a case where the district court imposed a non-Guidelines sentence based solely on its disagreement with the Guidelines. In this case, the district court correctly calculated the Guidelines range and gave specific, valid reasons for sentencing lower than the advisory range. Applying the principles of review in light of the § 3553(a) factors and the reasons given by the district court, the 90-month sentence imposed was reasonable.

Id.

[3]

Both Eldick and Marcus Williams are consistent with the deferential standard of *845 review we have articulated in our sentencing cases. See, e.g., Talley, 431 F.3d at 788. The decisions also demonstrate strict observance of the Supreme Court’s mandate in Booker that the guidelines be treated as advisory.
III.

Aaron Williams: The Case At Issue

The opinion in the case at issue here, Aaron Williams, is in direct tension with its predecessors and departs from our compliance with Booker. Aaron Williams reverses a sentence below the guidelines range on the basis that the district court considered an improper factor in conducting its reasonableness review under § 3553(a); however, that “impermissible factor” is simply the district court’s judgment that the recommended guideline sentence in this case, which applied the 100:1 crack-cocaine ratio, would have been “greater than necessary” to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes, and provide the defendant with treatment.
Aaron Williams was convicted of possessing crack cocaine with intent to distribute. Although the guidelines advised a range of 360 months to life imprisonment, the district court sentenced Williams to 204 months imprisonment. Both at the sentencing hearing and in a written Memorandum Sentencing Opinion issued after the hearing, the district court explained the basis for its sentence, methodically evaluating the sentencing factors set forth in § 3553(a). The district court stated that its analysis was compelled by the central instruction from Congress that sentencing judges “impose a sentence sufficient, but not, greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].” The district court then explained that it arrived at the sentence imposed by “considering] the guidelines on an advisory basis in the context of the statutory factors set forth in 18 U.S.C. [§] 3553.”
Although the district court expressed frustration in its sentencing opinion regarding the 100:1 crack-cocaine disparity,[4] the court went on to explain the individual circumstances of the particular defendant that contributed to its sentencing decision: ‘With respect to Williams, the Court has already alluded to the nature and seriousness of the offense and Williams’ criminal *846 history. In short, Williams is a low-level drug dealer and was convicted of selling relatively small amounts of crack cocaine.” The district court found that sentencing Williams to a dramatically higher sentence based effectively on the government’s decision to purchase crack cocaine rather than powder cocaine would undermine public confidence in the law. The district court’s ultimate decision rested upon a balancing of the § 3553(a) factors with respect to the particular defendant before the court:
In short, a sentence of 30 years to life would not provide just punishment. Rather, such a harsh sentence would be totally out of character with the seriousness' of this offense and is not necessary to afford adequate deterrence to criminal conduct or to protect the public from further crimes by this Defendant. Rather than promoting respect for the law, a guideline sentence would have the opposite effect.
On the basis of this analysis, the district court sentenced the defendant to 204 months ■ imprisonment. . The court continued:- .
In considering all of the statutory factors, including the sentencing guidelines, the Court imposes a sentence of 204 months. This is a substantial term for a relatively minor offense. But, given the circumstances (crack versus powder cocaine) and Williams’ long history of selling illegal drugs, a lengthy sentence is warranted. A guidelines sentence, however, is not.
Based on my review of these cases, I fail to see how Aaron Williams differs in any material way from both Marcus Williams[5] and Eldick. In Eldick, the district court’s sentence above the guidelines range was based upon the court’s assessment that “the guidelines range was ‘inadequate’ because it failed to grasp the full significance and breadth of harm inflicted by Eldick’s actions.” 443 F.3d at 789-90. The district court explicitly stated that it felt the guidelines “should not be applied” because they did “not adequately take into account the severity of the damage done by [the defendant].” We cited that statement with approval. Id. at 788 n. 2. In Marcus Williams, we again affirmed a sentence outside the guidelines range, notwithstanding the district court’s statements that the guidelines “do not produce a just and reasonable result” and were “unreasonable” in that case.
The judges concurring in the denial of rehearing en banc concede that the district court evaluated the sentencing factors set forth in § 3553(a), but nevertheless would reverse the district court because, they claim, “the district court must do more than simply couch, in the language of the § 3553(a) factors, its personal and categorical rejection of Congress’s clearly expressed sentencing policy as embedded in the Guidelines.” The majority essentially would tell the district court that they don’t believe its statement that it considered all of the statutory factors. This scrutiny of the statements of a district court judge is unprecedented in our sentencing jurisprudence; in every other context, we take the statements of a district court at face value. See, e.g., United States v. Scott, 426 F.3d 1324, 1330 (11th Cir.2005) (stating that “the district court explicitly acknowledged that it had considered Scott’s arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-Booker sentences.”); Talley, 431 F.3d at 786 (“[A]n acknowledgment by the district court that *847 it has considered the defendant’s arguments and the factors in section 3553(a) is sufficient under Booker.").
The panel in Aaron Williams explains that it did not take the statements of the district court at face value because, elsewhere in the sentencing memorandum, the district court stated its “personal disagreement with Congress’s judgment as to how much harsher the penalties for crack offenders should be.” 456 F.3d at 1366. I can think of no other context in which we reverse a district court for its dicta rather than the stated basis for its decision. We are not in the business of censoring the district courts when those courts have stated explicitly that they have followed the statutory mandate of § 3553. Furthermore, the panel opinion has the perverse effect of discouraging district court judges from stating the reasons for imposing sentence — the less they say, the less that can be used as a basis to reverse them. This result is inconsistent with the candor to which our criminal justice system otherwise aspires. See, e.g., 18 U.S.C. § 3553(c)(1) (requiring the court, at the time of sentencing, to “state in open court the reasons for its imposition of the particular sentence”).
Ultimately, I disagree with the substance of this Court’s suggestion that a district court may not sentence crack offenders “in a manner inconsistent with Congress’s intent as expressed in the Guidelines.”[6] The panel in Aaron Williams suggests that the crack guidelines are always mandatory when it states that “[fjederal courts are not at liberty to supplant [the 100:1 drug quantity ratio].” 456 F.3d at 1367. I believe this is an express violation of Booker, which commanded district courts to comply with the post -Booker § 3553(a). The panel in Aaron Williams has essentially faulted the district court for its compliance with the fundamental requirement of § 3553(a) — to arrive at a sentence no greater than is necessary.
Congress’s judgment regarding the penalties for crack offenders are reflected in the sentencing guideline range, which cannot be imposed mandatorily without violating the Constitution. This Court is not *848 free to ignore Bookers fundamental holding by requiring blind adherence to the crack guidelines.
Booker requires that a sentencing court consider all of the factors listed in § 3553(a), not just the suggested guideline. Section 3553(a) requires a sentencing court to balance all of the enumerated factors in arriving at a sentence that is sufficient, but not greater than necessary, to fulfill the purposes listed in § 3553(a)(2). Congress did not create an exception to § 3553(a) for crack offenses, nor did the Supreme Court in Booker. Sentencing courts must arrive at a sentence that is “reasonable,” whether sentencing a crack offense or any other offense. This remains true even though Congress has not elected to change the crack guidelines, notwithstanding numerous recommendations by the Commission to the contrary. See Aaron Williams, 456 F.3d at 1365-66.
Accordingly, under Booker and the post-Booker Sentencing Reform Act, a sentencing court is not only permitted but is required to evaluate the propriety of applying the 100:1 crack-cocaine ratio in a particular case. As Judge Michael recently stated:
While the Commission’s findings alone cannot justify a below-guidelines sentence, in certain cases they can help sentencing courts analyze the § 3553(a) factors and select a sentence that is “sufficient, but not greater than necessary” to punish, deter, and rehabilitate the defendant. The Commission’s findings, in other words, can be considered insofar as they are refracted through an individual defendant’s case.
United States v. Eura, 440 F.3d 625, 637 (4th Cir.2006) (Michael, J., concurring) (citations omitted).[7] The Third Circuit’s recent approach in Gunter is very similar:
[Ojnce between the minimum and maximum statutory ranges of 21 U.S.C. § 841(b), there is nothing special about the crack cocaine Sentencing Guidelines that makes them different, or less advisory, than any other Guidelines provision ....
Post-Booker a sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines — but not demanded by 21 U.S.C. § 841(b) — as simply advisory at step three of the post-Booker sentencing process (imposing the actual sentence after considering the relevant § 3553(a) factors) ....
Of course, the District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential. Furthermore ... we do not suggest (or event hint) that the Court categorically reject the 100:1 ratio and substitute its own, as this is verboten. The limited holding here is that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker sentencing process.
462 F.3d at 248-49.
Under Booker and our governing precedent, a district court may “disregard” the *849 100:1 crack-to-cocaine ratio if it properly calculates the guidelines range and sentences the defendant based on the individual facts and circumstances of the case. To the extent that Aaron Williams conflicts with that proposition, I dissent from our denial of rehearing en banc.

. The "100:1 crack-cocaine ratio” refers to the relative quantities of crack and powder cocaine required to trigger inclusion in a particular guidelines range. Congress requires one hundred times more powder cocaine than crack cocaine to trigger inclusion in a range. See 21 U.S.C. § 841(b)(1).

. See also United States v. Pope, 461 F.3d 1331(11th Cir.2006) (following Aaron Williams).

. The Third Circuit has since cited United States v. Marcus Williams for the proposition that the Courts of Appeal have not unanimously rejected a court's decision to sentence below the guidelines range in crack-cocaine cases. See United States v. Gunter, 462 F.3d 237, 244-45 (3d Cir.2006). The Third Circuit suggests that Marcus Williams stands for the proposition that district courts may take the guidelines’ crack/powder cocaine differential into consideration and ultimately impose a non-guidelines sentence. Id. Additionally, in United States v. Daniels, 147 Fed.Appx. 869 (11th Cir.2005), we held that consideration of the drug involved was a valid factor in the district court's § 3553(a) analysis. As the Third Circuit explained, citing our cases as precedent, "consideration of the drug in *845 volved (i.e., crack cocaine, powder cocaine, heroin, et al.) as a sentencing factor is proper and encouraged in the post-Booker regime.” United States v. Gunter, 462 F.3d 237, 245-46 (3d Cir.2006) (emphasis added; citing Marcus Williams, 435 F.3d at 1354-55).

. The ratio has been subject to widespread criticism almost since its inception. The Sentencing Commission itself has concluded that the 100:1 powder to crack ratio produces sentences that are greater than necessary to satisfy the purposes of punishment. According to the Commission, the 100:1 ratio exaggerates the relative harmfulness of crack cocaine and the majority of crack offenses involve low drug quantities, no violence, and defendants with low criminal histories. This differential in sentencing creates an unwarranted disparity that has been correlated with racial disparities and that undermines the public confidence in the criminal justice system. See, e.g., U.S. Sentencing Comm'n, Report to the Congress: Cocaine and Federal Sentencing Policy, at 91, 102-103 (2002) (declaring “firmly and unanimously” that the 100:1 drug quantity ratio “is unjustified and fails to meet the sentencing objectives set forth by Congress”); U.S. Sentencing Comm'n, Special Report to the Congress: Cocaine and Federal Sentencing Policy, at 2 (1997) (“[Ajlthough research and public policy may support somewhat higher penalties for crack than for powder cocaine, a 100-to-1 quantity ratio cannot be justified.”); U.S. Sentencing Comm'n, Special Report to Congress: Cocaine and Federal Sentencing Policy (1995).

. Indeed, Aaron Williams involved the same district judge as Marcus Williams, who imposed a below-guidelines sentence for the same offense as in Marcus Williams, and who voiced the same type of criticism of the guidelines as in Marcus Williams.

. See United States v. Pope, 461 F.3d 1331 (11th Cir.2006), which relied on Aaron Williams. The defendant in Pope argued that the 100:1 drug quantity ratio was excessive as applied in his case. The district court declined to consider that argument in its 3553(a) analysis. The panel, relying heavily on Aaron Williams, held that “the district court did not err by rejecting Pope's argument that it could disregard the 100:1 crack-to-cocaine ratio as part of its calculation of a reasonable sentence under 18 U.S.C. § 3553(a)." Id. at 1337. Of course, a district court may not completely disregard the ratio, but that was not Pope's argument. His argument was that the district court is permitted to consider the drug involved as one factor in its analysis whether a sentence is reasonable as applied to a particular defendant; in some cases, he argued, a guidelines sentence will be unreasonable.
The panel opinion in Pope is tantamount to a holding that the guidelines are mandatory because § 3553(a)(4) — the factor requiring consideration of the guidelines — is to supersede the other factors no matter what. The panel explained that, notwithstanding Booker, "the district court remains obligated to calculate the correct Guidelines range, and as part of that obligation, the court may not disregard individual Guidelines or construe them in a manner inconsistent with Congress’s intent as expressed in the Guidelines, even if the ultimate range based on those Guidelines is advisory in nature.” Id. This statement is confounding because the Court held in Booker that Congress’s intent, as expressed in the Sentencing Reform Act's imposition of mandatory guidelines, was unconstitutional. If Congressional intent, as embodied in the sentencing guidelines’ “Drug Quantity Table,” is to always supercede all other § 3553(a) factors, then Booker is rendered meaningless in such cases.

. After Booker, a number of courts have imposed sentences below the range in crack cocaine cases in light of the Commission’s conclusions, the facts and circumstances of the case, and the history and characteristics of the defendant. E.g., United States v. Perry, 389 F.Supp.2d 278, 303-08 (D.R.I.2005) (noting that to disregard the Sentencing Commission’s findings because Congress failed to adopt them would raise serious Booker concerns); Simon v. United States, 361 F.Supp.2d 35, 44-49 (E.D.N.Y.2005); United States v. Harris, 2005 U.S. Dist. LEXIS 3958, at *10-*11 (D.D.C. Mar. 7, 2005); United States v. Smith, 359 F.Supp.2d 771, 777-82 (E.D.Wis.2005).