[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10848
Non-Argument Calendar

_____

D. C. Docket No. 06-00063-CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCOLYNN GERMAINE WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 19, 2007)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Defendant Marcolynn Williams appeals his convictions for drug-related offenses and possession of a firearm by a convicted felon and his concurrent 108-month sentences. After review, we affirm Williams's convictions and sentences.

## I. BACKGROUND

### A. Offense Conduct

The Tallahassee Police Department ("TPD") conducted a series of controlled buys in which an informant purchased cocaine from defendant Williams. The first controlled buy occurred on April 19, 2006 and involved approximately 3.3 grams of cocaine. The second controlled buy occurred on April 28, 2006 and involved 7.45 grams of cocaine. The third controlled buy occurred on June 16, 2006 and involved 28.20 grams of cocaine. The indictment charged the second and third controlled buys, but not the first one.

During a search of Williams's residence, police discovered, among other things, marijuana; drug paraphernalia, including baggies, a scale and burning cannabis pipes; an electronic scanner for monitoring police traffic; a container with a false bottom that could be used to hide illegal contraband; and a loaded firearm in the bedroom. A search of Williams's car revealed cocaine and cannabis. After being arrested and read his Miranda rights, Williams admitted to selling cocaine for the past five years and described his history of drug dealing. Williams

indicated that the firearm seized in the residence was for protection because, on one occasion, Williams was involved in a situation in which someone had kicked in his door.

## B.     Trial Proceedings

A federal grand jury indicated Williams for: (1) conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), 846 ("Count One"); (2) distribution of a mixture and substance containing cocaine, on or about April 28, 2006, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) ("Count Two"); (3) distribution of a mixture and substance containing cocaine, on or about June 16, 2006, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) ("Count Three); (4) possession with the intent to distribute marijuana and a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C) ("Count Four"); (5) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g), 924(a)(2) ("Count Five"); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count Six").  Williams pled not guilty.  At a pretrial conference, the government's counsel indicated that he had already provided defense counsel with Jencks Act material.

At trial, the government called Sean Wyman, a TPD vice-narcotics officer

3

and the case agent in the Williams investigation. Wyman explained how TPD learned through an informant that a man known as "Mark" was dealing cocaine and later identified that man as Williams. Without objection, Wyman described the first controlled buy on April 19, 2006.

Williams's counsel then requested, and the district court granted, permission to voir dire the witness. Defense counsel asked Wyman whether the informant was "wired" during the April 19 buy, and Wyman responded affirmatively. Defense counsel asked whether Wyman would have the taped recordings for the April 19 buy, and Wyman indicated that he should. Defense counsel asked whether Williams had been charged with any offenses in relation to the April 19 buy. Wyman conceded that Williams had not been charged for this buy. Defense counsel questioned whether Wyman had testified truthfully as to the April 19 buy. Wyman reiterated that the informant purchased cocaine from Williams on April 19.

Defense counsel then objected to Wyman's testimony on relevance grounds only. The district court overruled the objection, and the government continued its examination of Wyman. Wyman described the second and third controlled buys and identified government exhibits consisting of taped recordings of telephone conversations with Williams attempting to set up the controlled buys and of the first and second controlled buys themselves. Wyman described the search of

4

Williams's residence and car and Williams's post-arrest statement.

During cross-examination, Wyman admitted that, although he had documented the April 19 controlled buy, he had not included that transaction in the other reports he had prepared as part of the Williams investigation, as follows:

> Q: Let me ask you something. This April 19th drug deal that you say that you got this three and a half ounce - - grams of cocaine from Mr. Williams from Mr. Rowan, you did a 21-page report, correct?
> A: Yes.
> Q: You did an 8-page report, correct?
> A: Yes, ma'am.
> Q: And there is a lot of supplementals, correct?
> A: Yes, ma'am.
> Q: Where do you mention anywhere the April 19th drug deal ever happening?
> A: Ma'am, I didn't mention it. I do have it documented, but it's not documented in the report.
> Q: Okay. Now, it's not documented in the report anywhere?
> A: Not in the report.

Defense counsel asked Wyman why the April 19 buy had not been mentioned before in discovery, and Wyman indicated that he did not handle discovery, but that he had documentation with him on the April 19 transaction, as follows:

> Q: My question is this:
> [Williams has] not been charged with this April 19th drug sale; it never has been mentioned before today; no dope has been seen before today, at least as far as discovery is concerned. So, all of a sudden today you come in with this dope that he made a sale on correct?
> A: No, ma'am. As far as discovery and all of that, I can't answer that. I don't handle the discovery between you guys.
> Q: Right.

A:    The deal happened.  I do have it documented.  I do keep records of the money that was spent.  I have a piece of paper right here that actually has the information, the time, the date, who was involved.  The reason why it's not documented in the report, which I believe is what you're trying to get to, if I can explain that –

Q:    Well, you can explain it to [the government's counsel] on [redirect].  I'm sure he's going to ask you.  But I just want to make sure I understand that this April 19th deal is mentioned nowhere in any reports that [the government's counsel] has or I have, or at least I've been given, or [the government's counsel] has; is that correct?

A:    That's correct.

Defense counsel then did not make a Jencks request for the document to which Wyman referred or make any other objections.  Instead, defense counsel resumed cross-examination by questioning Wyman about his interview with Williams after the arrest.

On redirect, Wyman explained that the documentation he had relating to the April 19 buy was a "Buy Operation Report," which contained "basic information" about the transaction.  As Wyman began to describe the information in the Buy Operation Report, defense counsel objected on hearsay grounds.  The district court overruled the objection, but indicated that it would sustain the objection if defense counsel wanted the document placed into evidence as opposed to Wyman testifying about its contents.  The government asked to mark the Buy Operation Report as an exhibit and showed the document to defense counsel.  Defense counsel asked for a side-bar conference, during which she objected that she had not

6

received any evidence of the April 19 controlled buy during discovery and had learned of the existence of the Buy Operation Report only a few minutes ago.

The government responded that the Buy Operation Report constituted investigative notes that were not Jencks material. The government also argued that defense counsel had suggested during cross examination that Wyman had fabricated the April 19 transaction and that it was thus entitled to present documentation of the April 19 controlled buy. The government noted that during discovery it had produced a lab report for the April 19 controlled buy.

The district court overruled Williams's objection, noting that the Buy Operation Report was offered to rebut a charge of recent fabrication and was a fair response to that cross-examination. The district court stated that it would elaborate on its ruling at the next break.

The government admitted the Buy Operation Report, over defense counsel's same objection. The Buy Operation Report was a standard, preprinted form that contained numerous blanks for an officer to include the relevant requested information. Wyman testified that the Buy Operation Report was prepared every time a controlled buy was conducted. The purpose of the Buy Operation Report was to document what had occurred during the buy, such as who was present, the amount of currency and drugs used, the bill denominations and serial numbers of

7

the currency used and whether firearms were present.

After the government concluded redirect examination of Wyman, the district court asked defense counsel whether she had further questions for Wyman. Defense counsel did not.

At the next break, the district court conferred with counsel about whether the Buy Operation Report was Jencks material and whether Williams was prejudiced by its admission. The district court noted that defense counsel had continued to imply on cross examination that the April 19 buy was a fabrication even after Wyman stated that he had documentation related to that transaction and had not taken the opportunity to recross Wyman after the Buy Operation Report was admitted into evidence. The district court reserved ruling on the issue. After the government rested, the district court overruled Williams's Jencks objection.

The jury returned a guilty verdict on the first five counts, but found Williams not guilty of the final count of possession of a firearm in furtherance of a drug trafficking offense. Pursuant to a special interrogatory, the jury found that Williams conspired to distribute 499 or less grams of cocaine.

## C. Sentencing

The Presentence Investigation Report ("PSI") stated that the offenses involved 2.7 kilograms of cocaine, based upon the trial testimony of Richard

Bennett, a co-defendant who pled guilty. The PSI recounted that Bennett testified that he sold Williams between one and two ounces of cocaine per week for eight months. The PSI estimated the drug amount of two ounces, or 56.7 grams, 1.5 times per week for 32 weeks, for a total of 2.7 kilograms of cocaine.

The PSI recommended a base offense level of 28, pursuant to U.S.S.G. § 2D1.1(a)(3) and (c)(6), because Williams was accountable for 2.7 kilograms of cocaine.[1] The PSI also recommended a two-level increase for possession of a firearm during one drug transaction, pursuant to U.S.S.G. § 2D1.1(b)(1), and a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Although this adjusted Williams's offense level to 32, the PSI recommended a total offense level of 34, pursuant to U.S.S.G. § 4B1.1(b)(B), because Williams was a career offender. The PSI recommended a criminal history category of VI, pursuant to U.S.S.G. § 4B1.1(b), based on Williams's career offender status.

With a total offense level of 34 and a criminal history category of VI, the PSI recommended an advisory guidelines range of 262 to 327 months' imprisonment. The statutory maximum imprisonment on counts one through four was thirty years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 851, and the statutory

---

[1]The PSI grouped Williams's drug and firearm offenses together according to U.S.S.G. § 3D1.2(c) and, pursuant to U.S.S.G. § 3D1.3(a), determined that U.S.S.G. § 2D1.1, with its drug quantity table, was the applicable guidelines provision for determining Williams's base offense level because it resulted in the highest offense level.

maximum for count five was ten years, pursuant to 18 U.S.C. § 924(a)(2).

Williams filed written objections to the PSI. Among other things,[2] Williams objected to the PSI's factual finding that he is accountable for 2.7 kilograms of cocaine, noting that this amount is contrary to the jury's finding that the drug conspiracy involved less than 500 grams of cocaine. Williams did not object, however, to the PSI's summary of Bennett's testimony about the frequency and amounts of drugs he sold to Williams over an eight-month period. Williams also objected to the two-level firearm possession enhancement because, among other reasons, the jury acquitted him of possessing a firearm in furtherance of a drug trafficking offense.

At sentencing, Williams elaborated upon his challenge to the PSI's recommended drug quantity finding. Williams's counsel acknowledged that "the standard is different for the court in making that decision, it's preponderance of the evidence." However, defense counsel argued that, "aside from Mr. Bennett's testimony, who was the co-defendant, who had a lot of reasons to lie, and he ultimately got his benefit for coming in, there was no evidence that established that Mr. Williams sold 2.7 kilos of cocaine" and objected to it "being used as drug weight in the calculation."

---

[2]In the district court, Williams raised numerous other objections to the PSI that are not at issue in this appeal and not discussed further.

10

The district court overruled Williams's drug quantity objection. The district court found by a preponderance of the evidence that Williams was accountable for 1,960 grams of cocaine (which represents 1.9 kilograms). Specifically, the district court found Bennett's trial testimony credible and that Bennett had testified that Williams purchased two ounces of cocaine from him 4.3 times per month for eight months. The district court further explained that it calculated the drug amount of 1,960 grams by multiplying 8 (the number of months) by 4.3 (the number of times Williams purchased cocaine per month) by 28.5 (the number of grams in one ounce) by 2 (the number of ounces per week).

As to the firearm enhancement, defense counsel argued that the jury found that Williams had not possessed the gun in furtherance of drug trafficking. Defense counsel again acknowledged the different standard of proof at sentencing, but wanted her objection noted for the record. The district court overruled Williams's objection to the firearm enhancement. The district court found that Williams was responsible for the firearm at his residence and that the "gun was there for protection in connection with drug transactions."

The district court calculated a base offense level of 26, based on the drug quantity of 1.9 kilograms of cocaine, and then applied a two-level increase for possessing a firearm in connection with a drug offense and a two-level increase for

11

obstruction of justice. With a total offense level of 30 and a criminal history category of II, the district court concluded that Williams's advisory guidelines range was 108 to 135 months' imprisonment. The district court noted that the range was "advisory and not binding" and that it would consider that advisory range along with the factors in 18 U.S.C. § 3553(a). Because Williams successfully challenged some of the convictions cited in the PSI, the district court did not apply the career offender enhancements of U.S.S.G. § 4B1.1.

The district court heard statements from Williams and his family members and argument by defense counsel in mitigation. Williams requested a sentence below the advisory guidelines range.

The district court sentenced Williams to 108 months' imprisonment, at the low end of the advisory guidelines. The district court stated that it had considered the § 3553(a) factors and the advisory guideline range and had concluded that the 108-month sentence was sufficient but no greater than necessary to achieve the purposes of sentencing as set forth in § 3553(a).

Williams filed this appeal.

## II. DISCUSSION

### A. Jencks Act

On appeal, Williams argues that the district court erred in admitting any

testimony and evidence related to the April 19 controlled buy because the government failed to timely disclose the April 19 Buy Operation Report as required by the Jencks Act.[3]

Pursuant to 18 U.S.C. § 3500, commonly known as the Jencks Act, after a government witness has testified on direct examination and upon the defense's motion, the government must disclose any witness statements in its possession that relate to the subject matter of that witness's direct testimony. 18 U.S.C. § 3500(a)-(b); United States v. Delgado, 56 F.3d 1357, 1364 (11th Cir. 1995). The purpose of the Jencks Act disclosure requirements is to enable the defense to impeach a government witness during cross examination. See United States v. Prieto, 505 F.2d 8, 11 (5th Cir. 1974).[4] A "statement" for purposes of the Jencks Act is defined, in relevant part, as "a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1).[5] The parties

---

[3]We review a district court's enforcement of the Jencks Act's disclosure requirements for abuse of discretion. United States v. Schier, 438 F.3d 1104, 1112 (11th Cir. 2006). We review the district court's Jencks Act factual findings for clear error. United States v. Delgado, 56 F.3d 1357, 1363 (11th Cir. 1995). Furthermore, harmless error review applies to alleged Jencks Act violations. United States v. Beasley, 2 F.3d 1551, 1557 (11th Cir. 1993).

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the of the Fifth Circuit decided prior to October 1, 1981.

[5]The Jencks Act definition of a "statement" also includes a recording or transcription of a witness's oral statement that is a "substantially verbatim recital" and was recorded contemporaneously or a statement made by the witness to a grand jury. 18 U.S.C. § 3500(e)(2)-(3). Neither of these types of statement is applicable here.

13

dispute whether the Buy Operation Report, which is a form with blanks filled in, even qualifies as a "statement" under the Jencks Act and, if so, whether defense counsel ever made a proper Jencks request for the document.

We need not address these issues because the non-disclosure of the Jencks document must prejudice the defendant in order to warrant relief, and Williams has shown no prejudice here for several reasons. See United States v. Hamaker, 455 F.3d 1316, 1327 (11th Cir. 2006); United States v. Valera, 845 F.2d 923, 927 (11th Cir. 1988).

First, Williams points to nothing in the Buy Operation Report that impeached Wyman's testimony. Indeed, the Buy Operation Report is consistent with Wyman's testimony. Moreover, prior to trial the government in discovery gave defense counsel the lab report about the April 19 drug transaction and a tape recording of it (albeit a poor recording). Thus, there was no surprise or prejudice from the government's evidence that Williams was involved in the April 19 transaction. Indeed, Wyman testified about the April 19 drug buy without objection by defense counsel.

Second, Williams is mainly left to argue that the cross examination of Wyman would have been different if defense counsel had known about the Buy Operation Report. However, this argument ignores the key fact that two pages into

14

the cross examination of Wyman, defense counsel actually became aware documentation of the April 19 buy existed. Indeed, Wyman stated that he had the documentation with him on the stand. Nonetheless, defense counsel did not request to see the document or ask Wyman any questions about the document. Rather, defense counsel thereafter again made the point in her questions that the April 19 buy was not in the official reports, insinuating it did not occur.

In any event, even if defense counsel's cross examination of Wyman about the April 19 buy would have been different, Williams was not charged with or convicted of the April 19 buy, but only the April 28 and June 16 buys, and there was overwhelming evidence of Williams's guilt on the five counts of conviction. At trial, Williams himself admitted that he possessed cocaine with the intent to distribute it, and the government presented the testimony of various witnesses who either sold cocaine to Williams or purchased it from him, including the informant's testimony that he had purchased cocaine from Williams during each of the two charged controlled buys. Further, the government presented testimony that law enforcement officials discovered thirteen baggies of marijuana in Williams's car, and one government witness testified that a person who divides his drugs into individual specific amounts in various bags is involved in the offense of possession with the intent to sell or distribute, rather than mere possession for personal use.

15

Wyman testified to the conduct of the two charged controlled buys, and the government introduced taped recordings of the telephone conversations with Williams setting up the controlled buys and of the April 28 controlled buy itself. Also, the government presented testimony and evidence that: (1) police officers seized a loaded firearm between the mattress and the box spring of a bed in Williams's home; (2) Williams admitted that he had the gun for protection; and (3) the gun was found in the same house in which law enforcement officials seized marijuana; drug paraphernalia, including baggies, a scale, and burning cannabis pipes; an electronic scanner for monitoring police traffic; and a container that had a false bottom that could be used to hide illegal contraband. Under the particular circumstances presented here, we cannot say Williams was prejudiced by the allegedly late disclosure and admission of the April 19 Buy Operation Report.

**B.      Sixth Amendment**

Williams asserts that the district court violated his Sixth Amendment rights by considering acquitted conduct in calculating his guidelines range and in imposing his sentences.[6] Specifically, Williams objects to the district court holding him responsible for 1,960 grams of cocaine, when the jury found that he

---

[6]We review de novo a defendant's properly preserved claim of constitutional error under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). United States v. Cain, 433 F.3d 1345, 1347 (11th Cir. 2005).

conspired to distribute less than 500 grams, and applying a two-level firearm possession enhancement, when the jury found him not guilty of possession of a firearm in furtherance of a drug trafficking crime.

Under our precedent, Williams's argument is without merit. After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), a district court that applies the Sentencing Guidelines in an advisory manner can "continue to consider relevant acquitted conduct so long as the facts underlying the conduct are proved by a preponderance of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury." United States v. Faust, 456 F.3d 1342, 1348 (11th Cir.), cert. denied, 127 S. Ct. 615 (2006). This holding is in keeping with our well-settled precedent that, when a district court applies the Sentencing Guidelines in an advisory fashion, nothing in Booker prohibits the district court from imposing guidelines enhancements based on facts found by the judge by a preponderance of the evidence. See United States v. Smith, 480 F.3d 1277, 1281 (11th Cir.), cert. denied, 128 S. Ct. 175 (2007); United States v. Pope, 461 F.3d 1331, 1335 (11th Cir. 2006); United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005).

Here, Williams does not contend that the government failed to prove, by a preponderance of the evidence, that he was responsible for 1,960 grams of cocaine

or that he possessed a firearm in furtherance of drug trafficking. The record shows that the district court applied the Sentencing Guidelines in an advisory manner and imposed a sentence below the statutory maximum authorized by the jury's verdict. Consequently, no Sixth Amendment violation occurred.

For all these reasons, we affirm Williams's convictions and sentences.

**AFFIRMED.**